UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| In the matter of the Application of HERBERT H. JURIST, SUSAN JOHNSON, DONALD POWERS, ALENA WALTERS, LINDA JURIST, ROBERT SLAWSKI, and STEVE WALTER, <br><br> Plaintiffs, <br><br> -against- <br><br> THE LONG ISLAND POWER AUTHORITY, THE POWER AUTHORITY OF THE STATE OF NEW YORK, ERIK KULLESEID COMMISSIONER OF THE NEW YORK STATE OFFICE OF PARKS RECREATION AND HISTORIC PRESERVATION, THE NEW YORK STATE OFFICE OF PARKS RECREATION AND HISTORIC PRESERVATION, THE NEW YORK STATE DEPARTMENT OF ENVIRONMENTAL CONSERVATION ("NYS DEC"), BASIL SEGGOS COMMISSIONER OF NYS DEC, THE BUREAU OF OCEAN ENERGY MANAGEMENT, THE NEW YORK STATE DEPARTMENT OF STATE, THE NEW YORK STATE ENERGY RESEARCH AND DEVELOPMENT AUTHORITY, <br><br> Defendants. | Civil Action No. <br> 19-CV-3762 (MKB)(LB) |

**DEFENDANT THE LONG ISLAND POWER AUTHORITY'S
MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS**

Adam Stolorow
Joyce E. Kung
SIVE PAGET & RIESEL P.C.
560 Lexington Avenue, 15th Floor
New York, NY 10022
Phone: (212) 421-2150
Fax: (212) 421-1891
astolorow@sprlaw.com
jkung@sprlaw.com

*Attorneys for Defendant
The Long Island Power Authority*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................1

STATEMENT OF FACTS ....................................................................................................3

ARGUMENT ........................................................................................................................6

    A.  The Court Lacks Subject Matter Jurisdiction over Plaintiffs' Claims ................................6

        1.  No Private Right of Action Exists for Plaintiffs' Federal or State Claims ...................6

        2.  The Court Should Decline to Exercise Supplemental Jurisdiction Over
            Plaintiffs' State-Based Article 78 Claims .......................................................8

    B.  Plaintiffs Have Failed to State a Claim Against LIPA, FRCP 12(b)(6) ...........................10

        1.  Plaintiffs' Claims Are Time-Barred Under the Applicable Four-Month Statute
            of Limitations .......................................................................................10

        2.  Public Trust Doctrine Is Inapplicable to State Parkland ...............................11

        3.  Plaintiffs Fail to Plead the Required Elements of a Public Nuisance Claim ..............12

        4.  Plaintiffs Fail to Plead Sufficient Facts to Confer Standing .........................13

    C.  Plaintiffs Failed to Properly Serve LIPA .........................................................14

    D.  Plaintiffs' Complaint Fails to Meet the Requirements of FRCP 8(a) ...............................16

CONCLUSION.....................................................................................................................17

# TABLE OF AUTHORITIES

**CASES**                                                                    **PAGE(S)**

*Bell Atlantic v. Twombly*,
550 U.S. 544 (2007)................................................................................................16

*Capruso v. Village of Kings Point*,
23 N.Y.3d 631 (N.Y. 2014) ...................................................................................12

*City of New York v. Milhelm Attea & Bros., Inc.*,
550 F. Supp. 2d 332 (E.D.N.Y 2008) ....................................................................12

*Coastal Commc'ns Serv., Inc. v. City of New York*,
658 F. Supp. 2d 425 (E.D.N.Y. 2009) .....................................................................9

*Conley v. Gibson*,
355 U.S. 41 (1957)..................................................................................................16

*Copart Indus. Inc., v. Consolidated Edison Co. of New York, Inc.*,
41 N.Y.2d 564 (N.Y. 1977) ...................................................................................12

*Davis v. Fed. Election Comm'n*,
552 U.S. 724 (2008)................................................................................................14

*Dickerson v. Napolitano*,
604 F.3d 732 (2d Cir. 2010)....................................................................................15

*E. End Eruv Ass'n, Inc. v. Town of Southampton*,
CV 13-4810 AKT, 2014 WL 4826226 (E.D.N.Y. Sept. 24, 2014) .....................8, 9

*Forte v. Lutheran Augustana Extended Care & Rehab. Ctr.*,
No. 09-CV-2358, 2009 WL 4722325 (E.D.N.Y. Dec. 9, 2009)..............................15

*Friends of Roeding Park v. City of Fresno*,
848 F. Supp. 2d 1152 (E.D. Cal. 2012)..................................................................7. 8

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
528 U.S. 167 (2000)................................................................................................14

*Friends of Van Cortlandt Park v. City of New York*,
95 N.Y.2d 623 (N.Y. 2001) ...............................................................................11, 12

*George v. NYC Dep't of City Planning*,
436 F.3d 102 (2d Cir. 2006)......................................................................................7

*Greene County Planning Bd. v. FPC*,
455 F.2d 412 (2d Cir. 1972).......................................................................................8

## TABLE OF AUTHORITIES

**CASES**                                                                                          **PAGE(S)**

*Harris v. City of New York*,
186 F.3d 243 (2d Cir. 1999)..........................................................................................10

*Karst Envtl. Educ. Prot., Inc. v. Envtl. Prot. Agency*,
475 F.3d 1291 (D.C. Cir. 2007).......................................................................................7

*King v. N.Y.C. Emps. Ret. Sys. (NYCERS)*,
212 F. Supp. 3d 371 (E.D.N.Y. 2016) ...........................................................................10

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
511 U.S. 375 (1994).........................................................................................................6

*Kone v. Joy Constr. Corp.*,
No. 15CV1328-LTS, 2016 WL 866349 (S.D.N.Y. Mar. 3, 2016) .................................10

*Matter of Committee to Preserve Brighton Beach & Manhattan Beach v. Planning
Commn. Of City of N.Y.*,
259 A.D.2d 26 (N.Y. App. Div. 1st Dep't 1999)...........................................................12

*Matter of Mansour v. County of Monroe*,
1 A.D.3d 976 (N.Y. App. Div. 4th Dep't 2003),
*lv. Denied* 1 N.Y.3d 508 (2004)....................................................................................12

*Matter of Save the Pine Bush, Inc. v. Common Council of City of Albany*,
13 N.Y.3d 297 (N.Y. 2009) ...........................................................................................13

*NAACP v. AcuSport, Inc.*,
271 F. Supp. 2d 425 (E.D.N.Y. 2003) ...........................................................................13

*Niagara Preserv. Coalition, Inc. v. New York Power Auth.*,
121 A.D.3d 1507 (N.Y. App. Div. 4th Dep't 2014),
*lv. Denied,* 124 A.D.3d 1419 (N.Y. App. Div. 4th Dep't 2015).....................................11

*Selevan v. New York Thruway Auth.*,
584 F.3d 82 (2d Cir. 2009)..............................................................................................13

*Soc'y of Plastics Indus., Inc. v. Cnty. of Suffolk*,
77 N.Y.2d 761 (N.Y. 1991) .......................................................................................8, 13

*Town of Mount Pleasant v. Van Tassell*,
7 Misc.2d 643, 166 N.Y.S.2d 458 (N.Y. Sup. Ct., Westchester Cnty. 1957)................13

*Union Sq. Park Community Coalition, Inc. v. New York City Dep't of Parks & Recreation*,
22 N.Y.3d 648 (N.Y. 2014) ...........................................................................................12

# TABLE OF AUTHORITIES

**CASES**                                                                  **PAGE(S)**

*Ware v. Manhattan and Bronx Surface Transit Operating Auth.*,
49 Misc.2d 704 (N.Y. Sup. Ct., N.Y. Cnty., 1965) ........................................15

*Weiss v. Incorporated Village of Sag Harbor*,
762 F. Supp. 2d 560 (E.D.N.Y. 2011) ........................................................7

*Weiss v. Kempthorne*,
580 F. Supp. 2d 184 (D.D.C. 2008) ..........................................................7

## STATUTES

5 U.S.C. § 701, et seq. .............................................................................8

16 U.S.C. § 470, et seq. ...........................................................................7

16 U.S.C. § 460l-4, et seq. ........................................................................7

28 U.S.C. § 1367 ....................................................................................9

28 U.S.C. § 1441 ...............................................................................2, 9

28 U.S.C. § 1442(a)(1) .........................................................................2, 9

42 U.S.C. § 4321, et seq. ..........................................................................7

FRCP 8, et seq. ...............................................................................2, 16

FRCP 12(b)(1) .................................................................................2, 6

FRCP 12(b)(5) ...............................................................................2, 14

FRCP 12(b)(6) ...............................................................................2, 10

FRCP 12(c) ...........................................................................................7

## STATE RULES & REGULATIONS

6 NYCRR Part 617 .................................................................................4

CPLR § 7803(3) .............................................................................10, 11

CPLR § 311 .........................................................................................15

# TABLE OF AUTHORITIES

**STATE RULES & REGULATIONS**                                                           **PAGE(S)**

CPLR § 312-A .............................................................................................................15

N. Y. Pub. Auths. Law § 1020 et seq....................................................................3, 15

New York State Envtl. Conservation Law, Art. 71, Title 25........................................8

**OTHER AUTHORITIES**

Gov. Andrew M. Cuomo, Press Release, Governor Cuomo Announces $18 Million Energy and Nature Education Center at Jones Beach State Park (Nov. 9, 2018), *available at* https://www.governor.ny.gov/news/governor-cuomo-announces-18-million-energy-and-nature-education-center-jones-beach-state-park (last accessed May 19, 2020).....................................1, 3

DEC ENB, Negative Decl., (Jan. 30, 2019),
*available at* https://www.dec.ny.gov/enb/20190130_not1.html.....................................................4

LIPA Minutes of the 279th Meeting Held on December 19, 2018, *available at* https://www.lipower.org/wp-content/uploads/2019/01/Approved-Minutes-December-19-2018-Board-Mtg.pdf ...........................................................................................................11

LIPA Minutes of the 281st Meeting Held on March 20, 2019, *available at* https://www.lipower.org/wp-content/uploads/2019/05/Approved-Minutes-March-20-2019-Board-Mtg.pdf ..............................................................................................................4

LIPA Presentation, Jones Beach Energy and Nature Center Overview (Dec. 18, 2019), *available at* https://www.lipower.org/wp-content/uploads/2019/12/JBENC-LIPA-2.pdf (last accessed May 19, 2020) ...........................................................................................................3

## PRELIMINARY STATEMENT

The Energy and Nature Education Center (the "Education Center" or the "Project"), which is to be built at Jones Beach State Park (the "Park") in Nassau County, New York, is a revitalization project spearheaded by a public-private partnership involving the New York State Office of Parks, Recreation and Historic Preservation ("State Parks"), the Long Island Power Authority ("LIPA"), PSEG Long Island, the New York Power Authority ("NYPA"), and private donors. The Education Center will be an "interactive facility to encourage visitors of all ages to become good stewards of the environment and smart energy consumers." Press Release, Gov. Andrew M. Cuomo, Governor Cuomo Announces $18 Million Energy and Nature Education Center at Jones Beach State Park (Nov. 9, 2018), *available at* https://www.governor.ny.gov/news/governor-cuomo-announces-18-million-energy-and-nature-education-center-jones-beach-state-park (last accessed May 19, 2020).

Seeking to block the Project and to maintain the current use of the site as an asphalt parking lot, *pro se* Plaintiffs commenced this action on June 7, 2019 against LIPA, NYPA, State Parks, the New York State Department of Environmental Conservation ("DEC"), the New York State Energy Research and Development Authority ("NYSERDA"), the Bureau of Ocean Energy Management ("BOEM"), and various officials of the foregoing agencies, seeking declaratory and injunctive relief pursuant to Article 78 and Article 30 of the New York Civil Practice Law and Rules ("CPLR") in New York State Supreme Court in the County of Nassau. Plaintiffs also filed an amended notice of petition and summons that day (the "Complaint").

The Complaint spans 191 pages and 477 paragraphs, and is frequently difficult to follow, with claims alleged against State Parks under the New York State Environmental Quality Review Act ("SEQRA," at ¶ 48 et seq.; see also ¶ 458 et seq.), with other claims alleged against various combinations of defendants and unnamed "John Doe" investors under the federal Land and Water

1

Fund Conservation Act ("LWFCA") (¶ 19 et seq.), the state Public Trust Doctrine (¶ 236 et seq.); the federal Coastal Zone Management Act ("CZMA") (¶ 262 et seq.), the National Environmental Policy Act ("NEPA") (¶ 282 et seq; ¶ 298 et seq.), the state Tidal Wetlands Act (¶ 352 et seq.), the National Historic Preservation Act ("NHPA") (¶ 416 et seq.), and common law public nuisance (¶ 432 et seq.). BOEM removed this action to federal court pursuant to 28 U.S.C. §§ 1441 and 1442(a)(1), and this Court denied Plaintiffs' motion for remand.

Plaintiffs' attempt to block a public environmental educational facility from being built on state land is without cause and without merit, for the reasons described herein. We respectfully request that the Court grant LIPA's motion to dismiss because:

- The court lacks subject matter jurisdiction over Plaintiffs' claims. No private right of action exists for Plaintiffs' statutory claims, and the Court should decline to extend supplemental jurisdiction over any remaining state law claims;

- Plaintiffs' claims are time-barred under state law;

- The public trust doctrine on which Plaintiffs rely does not apply to state parkland;

- Plaintiffs have failed to state a public nuisance claim;

- Plaintiffs have failed to plead standing;

- Plaintiffs have failed to properly serve LIPA; and

- The complaint's allegations fail to meet the specificity requirements of FRCP 8(a).

Accordingly, LIPA submits this memorandum of law in support of its motion to dismiss Plaintiffs' claims against LIPA under FRCP 12(b)(1), 12(b)(5), 12(b)(6), and FRCP 8.

## STATEMENT OF FACTS

The new Education Center at Jones Beach State Park will feature a number of exhibits that highlight the dynamic beach environment, the ways energy and nature affect each other on Long Island, how electricity is generated and distributed, how renewable power resources connect to the grid and the home, and how consumers can manage energy more efficiently to lower our carbon footprint. Press Release, Gov. Andrew M. Cuomo, Governor Cuomo Announces $18 Million Energy and Nature Education Center at Jones Beach State Park (Nov. 9, 2018), *available at* https://www.governor.ny.gov/news/governor-cuomo-announces-18-million-energy-and-nature-education-center-jones-beach-state-park (last accessed May 19, 2020). Other exhibits will focus on biodiversity, coastal resiliency, and local conservation efforts on the beach, including a piping plover conservation area. Presentation, Jones Beach Energy and Nature Center Overview (Dec. 18, 2019), *available at* https://www.lipower.org/wp-content/uploads/2019/12/JBENC-LIPA-2.pdf (last accessed May 19, 2020). The Education Center has been planned as a carbon net-zero facility and will be constructed in an existing parking lot at the Park. As part of the plan, nearly ten acres of pavement will be replaced by a pollinator area, and 219 acres of land will be designated as Park Preservation Area. *Id.* The Education Center building will replace an existing Park building at the site. *Id.*; *see also* Complaint ¶¶ 41-42. Jones Beach State Park is part of New York's state park system and the Project will be built entirely on state-owned land.

LIPA is a corporate municipal instrumentality and political subdivision of the State of New York, created by an Act of the New York State Legislature in 1986. N. Y. Pub. Auths. Law § 1020 *et seq*. LIPA provides electric service to 1.1 million customers in its designated service area, which includes Nassau County, Suffolk County, and the Rockaways in Queens County. LIPA was a

natural partner for State Parks in the development of the Education Center because of LIPA's central role to so many New Yorkers.

State Parks, having been designated as lead agency, conducted a review under SEQRA pursuant to 6 NYCRR Part 617. As required by statute, the negative declaration for the Project was then published in DEC's Environmental Notice Bulletin ("ENB") on January 30, 2019. The negative declaration clearly set forth LIPA's involvement as a "partner" to State Parks, and the nature of the Project, which was determined would "not have a significant adverse environmental impact." *See* Negative Decl., DEC ENB (Jan. 30, 2019), *available at* https://www.dec.ny.gov/enb/20190130_not1.html.

Plaintiffs' allegations against LIPA stem from LIPA's financial sponsorship of the Project. Confusingly, and perhaps in an attempt to avoid the statute of limitations, Plaintiffs identify the LIPA action being challenged as a March 20, 2019 resolution by the LIPA Board of Trustees to approve an annual report. Complaint, ¶ 130; *see also* Complaint, Ex. G. As reflected in the approved minutes of the March 20, 2019 Board Meeting, this resolution was not an approval of the Project or the funding thereof. Rather, as the minutes reflect:

> The Board of Trustees of the Long Island Power Authority (the "Board") is requested to adopt a resolution: (i) approving the annual report on the Board Policy on Economic Development (the "Policy"); (ii) finding that the Long Island Power Authority and its subsidiary, LIPA (collectively the "Authority" or "LIPA") have complied with the Policy and (iii) approving certain amendments to the Policy. . . .

*See* LIPA Minutes of the 281st Meeting Held on March 20, 2019, *available at* https://www.lipower.org/wp-content/uploads/2019/05/Approved-Minutes-March-20-2019-Board-Mtg.pdf (explaining that the Board had previous adopted a policy in 2017 with a purpose of promoting economic growth in LIPA's service territory, and seeking a resolution finding that LIPA had complied with that policy since its adoption). The presentation relied upon by Plaintiffs

4

and attached to the Complaint as Exhibit G merely reports LIPA's participation in the Education Center, and does not suggest any additional approvals or action taken by or on behalf of LIPA at that time.

Plaintiffs commenced this action on June 7, 2019 against LIPA, NYPA, State Parks, DEC, NYSERDA, BOEM, and various officials of the foregoing agencies, seeking declaratory and injunctive relief pursuant to CPLR Article 78 and Article 30 in New York State Supreme Court in the Nassau County. Plaintiffs attempted to serve LIPA by mailing the Complaint, along with the Notice of Petition and Summons to LIPA via Certified Mail. *See* Declaration of Elisa Rodriguez, dated May 29, 2020 ("Rodriguez Decl."), Exs. A, C (affidavit of service) and B, D (copies of envelopes and printouts of United States Postal Service tracking information) and by serving a copy on the Office of the New York State Attorney General via personal service. *Id.* at Exs. A, C. LIPA did not receive any Statement of Service by Mail, nor any Acknowledgement Receipt. Rodriguez Decl. ¶¶ 9-11.

On June 27, 2019 BOEM filed its first Notice of Removal, which was subsequently amended on July 10, 2019. ECF No. 1; ECF No. 7. Plaintiff Alena Walters filed a letter opposing the removal on July 23, 2019, and the Court determined that it would consider Ms. Walters opposition as a motion to remand. *See* Report and Recommendation of Magistrate Judge Bloom ("R&R") ECF No. 43, at 2. The Court held a conference on August 6, 2019 to discuss the motion to remand. At the August 6, 2019 conference before Magistrate Judge Bloom, all of the non-federal defendants agreed that if Plaintiffs withdrew their claims against BOEM, the non-federal defendants would consent to remand the case to state court. Order Regarding Initial Conference (Aug. 6, 2019), ECF No. 22. Plaintiff Donald Powers voluntarily withdrew his claims against BOEM, and Plaintiffs Marie Ryan and Lawrence Ryan withdrew all of their claims and were

terminated from the case. *See* Letter from BOEM to Court (Sep. 6, 2019), ECF No. 40. The remaining plaintiffs filed a letter with the Court on August 23, 2019 stating that they had unanimously agreed not to withdraw their claims against BOEM. ECF. No. 39.

On October 14, 2019, Magistrate Judge Bloom issued the R&R recommending that the Court deny the motion to remand. ECF No. 43. On March 10, 2020, the Court issued an order adopting the R&R and denying the motion to remand. ECF No. 50.

## **ARGUMENT**

A.   The Court Lacks Subject Matter Jurisdiction over Plaintiffs' Claims

1.   *No Private Right of Action Exists for Plaintiffs' Federal or State Claims.*

The Court should dismiss Plaintiffs' statutory claims for lack of subject matter jurisdiction under FRCP 12(b)(1), because no private right of action or citizen suit provision exists for any of the federal or state statutes that Plaintiffs allege LIPA has violated. Federal courts, being courts of limited jurisdiction, possess only that power authorized by the Constitution and by statute. Plaintiffs must overcome the presumption that the federal courts do not have subject matter jurisdiction and bear the burden of establishing that jurisdiction exists. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 378 (1994). However, Plaintiffs have already been advised by this Court that "the federal statutes cited by plaintiffs, the National Historic Preservation Act, the National Environmental Protection Act, the Coastal Zone Management Act, and the Land and Water Conservation Fund Act, do not confer private rights of action. As such, if the case remains in federal court, defendant will move to dismiss plaintiffs' complaint." Order at 2, n.1 (Aug. 17, 2019), ECF No. 27.

Plaintiffs allege that LIPA has violated the federal Land and Water Fund Conservation Act ("LWFCA") (¶ 19 et seq.), the state Public Trust Doctrine (¶ 236 et seq.); the federal Coastal Zone

Management Act ("CZMA") (¶ 262 et seq.), the National Environmental Policy Act ("NEPA") (¶ 282 et seq; ¶ 298 et seq.), the state Tidal Wetlands Act (¶ 352 et seq.), and the National Historic Preservation Act ("NHPA") (¶ 416 et seq.).

"It is well-accepted that . . . NEPA, LWCFA, and NHPA . . . do not create private rights of action to enforce their provisions." *Friends of Roeding Park v. City of Fresno*, 848 F. Supp. 2d 1152, 1160 (E.D. Cal. 2012) (*citing* 16 U.S.C. § 460l-4, et seq.; 16 U.S.C. § 470, et seq.; 42 U.S.C. § 4321, et seq.); *Karst Envtl. Educ. Prot., Inc. v. Envtl. Prot. Agency*, 475 F.3d 1291, 1295 (D.C. Cir. 2007) ("[B]ecause NEPA creates no private right of action, challenges to agency compliance with the statute must be brought pursuant to the Administrative Procedure Act [("APA")]. . . . [A]nd because NHPA, like NEPA, contains no private right of action, we agree with the Ninth Circuit that NHPA actions must also be brought pursuant to the APA."); *see also Weiss v. Incorporated Village of Sag Harbor*, 762 F. Supp. 2d 560, 579 n.11 (E.D.N.Y. 2011) (relying on *Karst* for the proposition that neither NEPA nor NHPA provide for private rights of action); *Weiss v. Kempthorne*, 580 F. Supp. 2d 184, 187-188 (D.D.C. 2008) ("[t]here is no private cause of action under NEPA and all challenges must be brought under the APA. . . . Similarly, a challenge to a Park Service approval under the LWCFA is reviewed under the arbitrary and capricious standard of the APA.").

The Second Circuit has also affirmed that the CZMA does not afford a private right of action. *See George v. NYC Dep't of City Planning*, 436 F.3d 102 (2d Cir. 2006) (affirming Magistrate Judge Bloom's Report and Recommendation, adopted by the United States District Court for the Eastern District of New York (Feuerstein, J.) in its entirety, dismissing pleadings pursuant to FRCP 12(c)).

The state Tidal Wetlands Act similarly provides no private right of action, and confers enforcement rights only on the New York State Attorney General. *See* New York State Envtl. Conservation Law, Art. 71, Title 25. To the extent that the Complaint can be interpreted to contain any allegation against LIPA for any violation under SEQRA, SEQRA similarly does not contain a general citizen suit provision. *Soc'y of Plastics Indus., Inc. v. Cnty. of Suffolk*, 77 N.Y.2d 761, 770 (N.Y. 1991).

To the extent Plaintiffs seek relief for such violations against LIPA, Plaintiffs must rely on some other authority, such as the APA, 5 U.S.C. § 701, et seq., to establish federal subject matter jurisdiction under these statutes. The APA requires procedural requirements before a suit can be brought, for example exhausting administrative remedies prior to seeking judicial review. *See*, *e.g.*, *Greene County Planning Bd. v. FPC*, 455 F.2d 412, 425 (2d Cir. 1972). Bypassing the APA should not be without consequence, and to the extent the law provides no private right of action, the Court lacks subject matter jurisdiction over these federal and state law claims. *See Friends of Roeding Park*, 848 F. Supp. 2d at 1161 (E.D. Cal. 2012).

2. *The Court Should Decline to Exercise Supplemental Jurisdiction Over Plaintiffs' State-Based Article 78 Claims*

To the extent Plaintiffs may argue that they could not have sought relief under the APA because their Complaint was brought in state court, the Complaint does not specifically allege any claim under Article 78 of the New York Civil Practice Law and Rules ("CPLR") against LIPA. Even assuming, *arguendo*, that this omission is merely a failure of specificity in Plaintiffs' pleading, LIPA further requests that this Court decline subject matter jurisdiction over any state law claims. "Because an Article 78 claim is based on state law, this Court is only empowered to entertain [an Article 78] claim through an exercise of its supplemental jurisdiction." *E. End Eruv*

*Ass'n, Inc. v. Town of Southampton*, CV 13-4810 AKT, 2014 WL 4826226, at *16 (E.D.N.Y. Sept. 24, 2014) (citing 28 U.S.C. § 1367).

"The overwhelming majority of district courts confronted with the question of whether to exercise supplemental jurisdiction over Article 78 claims have found that they are without power to do so or have declined to do so." *Coastal Commc'ns Serv., Inc. v. City of New York*, 658 F. Supp. 2d 425, 459 (E.D.N.Y. 2009).

To the extent that this Court has authority to exercise supplemental jurisdiction over claims that should have been brought under Article 78 in the original Complaint, LIPA further respectfully requests that this Court decline to accept jurisdiction over the claims brought under state law. The sole reason this litigation is in federal court is because of BOEM's removal of the matter as of right. However, "[c]ase law has catalogued a myriad of good reasons" for a federal court's decision not to exercise supplemental jurisdiction over an Article 78 claim 'especially when, as here, the claims are brought to obtain judicial review of the actions of a state or local administrative agency.'" *Coastal Commc'ns Serv.*, 658 F. Supp. 2d at 460. "Comity suggests such review be afforded by the state apparatus by which the agency is created and authorized to act." *Id.*; *see also E. End Eruv*, 2014 WL 4826226, supra, at *18, *21 (characterizing request for relief under Article 78 as asking "this court to function as a state tribunal and conduct an Article 78 hearing"; acknowledging that the Court "is cognizant of the fact that by not addressing Plaintiffs' Article 78 claim, the resolution of Plaintiffs' application will be delayed"; and declining to exercise jurisdiction "because the Court believes that the important issues posed by this case should be first addressed by the New York state courts.").

Indeed, when BOEM removed this action to this Court pursuant to U.S.C. §§ 1441 and 1442(a)(1), Plaintiffs moved to remand back to a state court. This Court provided Plaintiffs ample

explanation and opportunity to have their case heard in state court if they dismissed their claims against BOEM. Plaintiffs refused to do so, even though the defendants agreed at an August 6, 2019 conference before this Court that they would not object if this litigation were in fact remanded. ECF No. 22.

B.    Plaintiffs Have Failed to State a Claim Against LIPA, FRCP 12(b)(6)

1.    *Plaintiffs' Claims Are Time-Barred Under the Applicable Four-Month Statute of Limitations*

Assuming *arguendo* that Plaintiffs' intent was to challenge LIPA's adoption of its authorizing its funding of the Education Center under CPLR § 7803(3) as to "whether a determination was made in violation of lawful procedure, was affected by an error of law or was arbitrary and capricious or an abuse of discretion," LIPA moves this Court to dismiss Plaintiffs' claims against LIPA as time-barred pursuant to FRCP 12(b)(6). Dismissal on statute of limitations grounds is proper where a complaint "plainly appears time-barred on its face." *Kone v. Joy Constr. Corp.*, No. 15CV1328-LTS, 2016 WL 866349, at *2 (S.D.N.Y. Mar. 3, 2016) (*citing Harris v. City of New York*, 186 F.3d 243, 251 (2d Cir. 1999)).

"It is well settled that to commence a timely proceeding pursuant to CPLR Article 78, 'a petitioner must seek review of the determination within four months after the determination to be reviewed becomes final and binding[.]' A determination becomes final and binding when it has an impact on the petitioner." *See*, *e.g.*, *King v. N.Y.C. Emps. Ret. Sys. (NYCERS)*, 212 F. Supp. 3d 371, 394 (E.D.N.Y. 2016) (quoting the state court proceeding, Order of the Supreme Court of the State of New York County of Kings, Jan. 23, 2012, ECF No. 1-3 at 9–11).

As noted earlier, the March 20, 2019 approval, the only LIPA action cited by Plaintiffs in their Complaint, was a "resolution approving the Annual Report to the Board on Board Policy on Economic Development, and approved updates to the Policy as recommended in the Annual

Report." Complaint, ¶ 130. The Board's approval of an Annual Report (which merely provides an update on the Project as part of a PowerPoint presentation) does not constitute a final and binding "determination" subject to judicial review under Article 78, CPLR § 7803(3), and the March 20, 2019 resolution approving the adoption of the Annual Report could not have resulted in injury to the Plaintiffs because it had absolutely no bearing on LIPA's funding of the Project. Indeed, the actual funding approval for the Project occurred months earlier on December 19, 2018. *See*, *e.g.*, LIPA Minutes of the 279th Meeting Held on December 19, 2018, *available at* https://www.lipower.org/wp-content/uploads/2019/01/Approved-Minutes-December-19-2018-Board-Mtg.pdf (approval of funding for the Project as part of the Board's approval of the 2019 budget).

However, Plaintiffs waited until June 7, 2019 to commence its action challenging LIPA's funding approval and thus were well past the four-month statute of limitations.

### 2. *Public Trust Doctrine Is Inapplicable to State Parkland*

The Complaint further fails to state a claim against LIPA for a violation of the public trust doctrine. Complaint ¶¶ 236-261. Plaintiffs allege that the Education Center improperly alienates parkland, as it is a diversion to a "private, commercial, political, education, or public use other than the specific-purpose for which the land was dedicated . . . ." Complaint ¶ 236.

It is well established "that parkland is impressed with a public trust, requiring legislative approval before it can be alienated or used for an extended period for non-park purposes . . . ." *Friends of Van Cortlandt Park v. City of New York*, 95 N.Y.2d 623, 630 (N.Y. 2001). "It is undisputed, however, that there is no case law in New York applying the 'public trust' principle to state parks. The cases apply only to municipal parks." *Niagara Preserv. Coalition, Inc. v. New York Power Auth.*, 121 A.D.3d 1507, 1411 (N.Y. App. Div. 4th Dep't 2014), *lv. Denied* 124

A.D.3d 1419 (N.Y. App. Div. 4th Dep't 2015), (*citing Capruso v. Village of Kings Point*, 23 N.Y.3d 631, 636 (N.Y. 2014); *Union Sq. Park Community Coalition, Inc. v. New York City Dep't of Parks & Recreation*, 22 N.Y.3d 648, 652 (N.Y. 2014); *Friends of Van Cortlandt Park*, 95 N.Y.2d at 627; *Matter of Mansour v. County of Monroe*, 1 A.D.3d 976, 976 (N.Y. App. Div. 4th Dep't 2003), *lv. Denied* 1 N.Y.3d 508 (2004); *Matter of Committee to Preserve Brighton Beach & Manhattan Beach v. Planning Commn. Of City of N.Y.*, 259 A.D.2d 26, 28 (N.Y. App. Div. 1st Dep't 1999)).

The Complaint correctly identifies Jones Beach State Park as a state park, and not a municipal park. *See*, *e.g.*, Complaint, ¶ 8. Thus, the parkland alienation process and public trust doctrine do not apply and this claim should be dismissed for failure to state a claim upon which relief can be granted.

3.    *Plaintiffs Fail to Plead the Required Elements of a Public Nuisance Claim*

Plaintiffs further fail to state a claim for public nuisance, as their Complaint fails to plead the requisite elements of a public nuisance claim. "In New York, public nuisance is defined as 'conduct or omissions which offend, interfere with or cause damage to the public in the exercise of rights common to all, in a matter such as to offend public morals, interfere with use by the public of a public place or endanger or injure the property, health, safety or comfort of a considerable number of persons.'" *City of New York v. Milhelm Attea & Bros., Inc.*, 550 F. Supp. 2d 332, 349-350 (E.D.N.Y 2008) (citing *Copart Indus. Inc., v. Consolidated Edison Co. of New York, Inc.*, 41 N.Y.2d 564, 568 (N.Y. 1977)). The three elements of a public nuisance claim under New York law are articulated as follows: "(1) the existence of a public nuisance or substantial interference with a common right to the public; (2) negligent or intentional conduct or omissions by a defendant that create, contribute to, or maintain that public nuisance; and (3) particular harm suffered by

plaintiff different in kind from that suffered by the community at large as a result of that public nuisance." *NAACP v. AcuSport, Inc.*, 271 F. Supp. 2d 425, 448 (E.D.N.Y. 2003).

While the Complaint includes a laundry list of potential inconveniences that Plaintiffs allege will result from the construction of the Education Center, Plaintiffs fail to allege any "substantial annoyance and discomfort indiscriminately to many and diverse persons who are continually or may from time to time be in the vicinity." *Town of Mount Pleasant v. Van Tassell*, 7 Misc.2d 643, 166 N.Y.S.2d 458, 462 (N.Y. Sup. Ct., Westchester Cnty. 1957). Plaintiffs have also failed to allege the suffering of a particular harm that any of them will individually suffer that is different in kind than that suffered by the community at large. Accordingly, this claim should be dismissed.

4.    *Plaintiffs Fail to Plead Sufficient Facts to Confer Standing*

LIPA additionally moves this Court to dismiss the Complaint for failure to plead facts sufficient to confer standing. While the Complaint recites various standing requirements under federal law (¶¶ 276-277), Plaintiffs have not pled facts specific to any of the individual plaintiffs sufficient to confer standing. *See, e.g., Selevan v. New York Thruway Auth.*, 584 F.3d 82, 89 (2d Cir. 2009) ("In order to ensure that [the] case-or-controversy requirement is met, courts require that plaintiffs establish their standing as the proper parties to bring suit.") (internal citation omitted). "That an issue may be one of 'vital public concern' does not entitle a party to standing." *Soc'y of Plastics Indus., Inc. v. Cnty. of Suffolk*, 77 N.Y.2d 761, 769 (N.Y. 1991).  Plaintiffs must each specifically allege facts sufficient to demonstrate that their injury is real and different from the injury most members of the public face. *Matter of Save the Pine Bush, Inc. v. Common Council of City of Albany*, 13 N.Y.3d 297, 306 (N.Y. 2009).

13

To the extent Article III is applicable to a case removed to federal court, a plaintiff "must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000). The party seeking federal jurisdiction has the burden of establishing its existence, and "[a] plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought." *Davis v. Fed. Election Comm'n,* 552 U.S. 724, 734 (2008).

At best, the Complaint has only provided some generalized, conclusory allegations regarding any potential injury. For example, instead of providing how each named Plaintiff has used the Park, and how he or she will be injured by the development of the Project, the Complaint alleges vague inconveniences to a generalized population. *See* Complaint, ¶ 45 ("Persons who use the field and persons who use the concrete platform on which the existing building sits will no longer be able to sprawl out in repose on it in beach chairs and lounge chairs; They will no longer be able to do this if the existing building is replaced with an Energy Center.").

Moreover, Plaintiffs have not specifically alleged standing for each claim or even provided the most basic details about who the individual plaintiffs are, where they live, how they use the park, or how they will be affected by the construction of the Project. Since plaintiffs have not met their prima facie burden to allege standing, the Complaint should be dismissed in its entirety.

C.    Plaintiffs Failed to Properly Serve LIPA

Plaintiffs failed to properly serve LIPA, and as such, this Complaint should be dismissed for lack of personal jurisdiction under FRCP 12(b)(5) due to insufficient service of process. "Federal Rule Civil Procedure 12(b)(5) authorizes dismissal of the complaint for insufficient service of process upon motion by a defendant made prior to the defendant's filing an answer."

14

*Forte v. Lutheran Augustana Extended Care & Rehab. Ctr.*, No. 09-CV-2358, 2009 WL 4722325, at *2 (E.D.N.Y. Dec. 9, 2009). When a defendant moves to dismiss for lack of proper service, "the plaintiff bears the burden of proving adequate service." *Dickerson v. Napolitano*, 604 F.3d 732, 752 (2d Cir. 2010) (internal quotation marks and citation omitted).

According to Plaintiffs' Affidavit of Service, Plaintiffs attempted to serve LIPA by mailing the Complaint, along with the Notice of Petition and Summons to LIPA via Certified Mail. *See* Rodriguez Decl., Exs. A, C (affidavits of service) and B, D (copies of envelopes and printouts of tracking information) and by serving a copy on the Office of the Attorney General via personal service. *Id.*, Exs. A, C. These methods, however, failed to effect legal process of service on LIPA, which is not a state agency, but rather a public authority created by statute under New York Public Authorities Law § 1020 *et seq. See Ware v. Manhattan and Bronx Surface Transit Operating Auth.*, 49 Misc.2d 704 (N.Y. Sup. Ct., N.Y. Cnty., 1965); *see also* Siegel, N.Y. Pract. § 70 (6th ed.) (where service on public authority not specified in statute, service as on ordinary business corporation). As an alternative to personal service on an officer, director, or agent pursuant to CPLR § 311, personal service can be effected pursuant to CPLR § 312-A via first class mail, postage prepaid, together with a prepaid return envelope, two copies of a Statement of Service by Mail, and an Acknowledgement of Receipt, as set forth in subdivision (d) thereof.

According to Plaintiffs' Affidavit of Service filed with the state court, Plaintiffs attempted to serve LIPA by mail only, but LIPA did not receive any Statement of Service by Mail, nor any Acknowledgement Receipt, as required by CPLR § 312-A. Rodriguez Decl., ¶¶ 9-11. Thus, LIPA was never properly served. LIPA respectfully requests that this Complaint be dismissed for lack of personal jurisdiction.

15

D.    Plaintiffs' Complaint Fails to Meet the Requirements of FRCP 8(a)

LIPA further moves to dismiss Plaintiffs' Complaint for failure to meet the pleading standards set forth in FRCP 8(a)(2), which requires Plaintiffs "to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Rule 8(a)(2) "requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Id.* at 555 & n.3.

Plaintiffs' Complaint, while voluminous in its 477 paragraphs and 40 exhibits, contains hundreds of pages of allegations, but the allegations remain ambiguous as to which claims specifically apply to each defendant, and what specific actions are at issue. LIPA has responded herein to this Complaint in its best estimation, but would be prejudiced to the extent it must answer any surviving claims.

As an example, Plaintiffs' SEQRA claim beginning in Paragraph 48 is alleged as a "Special Proceeding . . . brought under SEQRA against Parks" in Paragraph 52. Plaintiffs later cite to the LIPA's March 20, 2019 Board resolution in Paragraph 130, and seeks an order declaring that the State Parks Office's environmental assessment is void, and enjoining "all Respondents" from proceeding with the Project. Similarly, Plaintiffs' Tidal Wetlands claim beginning in Paragraph 352 appears to be against DEC alone, but then later seeks to enjoin other defendants, including LIPA. LIPA cannot be expected to respond to Plaintiffs' allegations for the purposes of Rule 8(a), as LIPA cannot reasonably admit nor deny allegations that are inscrutable and which it cannot determine are applicable to Plaintiffs' claims against it.

Thus, should any claims survive, LIPA respectfully requests that this Court order Plaintiffs to (1) identify each "agency" action about which they are contesting; (2) explain briefly which

action and which defendant has violated each statute; (3) provide what right of action Plaintiffs have in each cause of action; and (4) describe briefly how each action injured each plaintiff.

## **<u>CONCLUSION</u>**

For the above stated reasons, it is respectfully requested that this Court enter an Order and Judgment dismissing Plaintiffs' claims against LIPA.

Dated: New York, New York
May 29, 2020

/s/ *Adam Stolorow*

Adam Stolorow
Joyce E. Kung
SIVE PAGET & RIESEL P.C.
560 Lexington Avenue, 15th Floor
New York, NY 10022
Phone: (212) 421-2150
Fax: (212) 421-1891
astolorow@sprlaw.com
jkung@sprlaw.com

*Attorneys for Defendant*
*The Long Island Power Authority*
