UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
HERBERT H. JURIST, SUSAN JOHNSON,
DONALD POWERS, LINDA JURIST,
ALENA WALTERS, ROBERT SLAWSKI,
and STEVE WALTER,

                       Plaintiffs,                                 **REPORT AND RECOMMENDATION**
                                                          **19 CV 3762 (MKB)(LB)**

       -against-

THE LONG ISLAND POWER AUTHORITY,
THE POWER AUTHORITY OF THE STATE OF
NEW YORK, ERIK KULLESEID, *Commissioner
of the New York State Office of Parks, Recreation,
and Historic Preservation*, THE NEW YORK
STATE OFFICE OF PARKS, RECREATION,
AND HISTORIC PRESERVATION, THE NEW
YORK STATE DEPARTMENT OF
ENVIRONMENTAL CONSERVATION,
BASIL SEGGOS, *Commissioner of
the NYS DEC*, THE BUREAU OF OCEAN
ENERGY MANAGEMENT, THE
NEW YORK STATE DEPARTMENT OF
STATE, and THE NEW YORK STATE
ENERGY RESEARCH AND DEVELOPMENT
AUTHORITY,

                      Defendants.
-------------------------------------------------------------X
**BLOOM, United States Magistrate Judge:**

     Seven[1] *pro se* plaintiffs[2] bring this hybrid-action for declaratory and injunctive relief

against several New York state agencies and authorities and one federal agency, challenging the

---

[1] The complaint names nine plaintiffs. Two plaintiffs voluntarily dismissed their claims, See Electronic Order dated August 22, 2019, and a third voluntarily dismissed his claims against the federal defendant Bureau of Ocean Energy Management ("BOEM"), See ECF No. 41. Plaintiffs state that only one plaintiff has voluntarily dismissed his claims against the BOEM and that the other two "do not wish to withdraw their claims against BOEM per se but rather removed themselves from the case in entirety (sic)." ECF No. 85-1, at 2. Plaintiffs are reminded that a *pro se* plaintiff may only represent him or herself in federal court. See 28 U.S.C. § 1654; see also Rivera v. Commc'n Workers of Am., No. 16-CV-1673(MKB)(LB), 2017 WL 4338754, at * 4 n.3 (E.D.N.Y Sept. 29, 2017) (citing Lattanzio v. COMTA, 481 F.3d 137, 139 (2d Cir. 2007)).

construction of an Energy Center at Jones Beach State Park. ECF No. 1-1 ("Compl."). The action invokes New York's Civil Practice Law and Rules ("C.P.L.R.") Article 78, seeking review of decisions made by various governmental bodies. Plaintiffs also seek relief under federal law, including the Coastal Barrier Resources Act ("CBRA"), the Land and Water Conservation Fund Act ("LWCFA"), the Coastal Zone Management Act ("CZMA"), the National Environmental Policy Act ("NEPA"), the National Historic Preservation Act ("NHPA"), and various provisions of New York state law. Id. ¶¶ 1-2. This case, initially filed in New York State Supreme Court, County of Nassau, was removed on June 27, 2019 by federal defendant Bureau of Ocean Energy Management ("BOEM"). ECF No. 1. All defendants now move to dismiss the complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Defendants Power Authority of the State of New York ("NYPA") and Long Island Power Authority ("LIPA") also move to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(5) for lack of proper service. Defendants Commissioner of the New York State Office of Parks Recreation and Historic Preservation, New York State Office of Parks Recreation and Historic Preservation ("PARKS"), New York State Department of Environmental Conservation ("DEC"), Commissioner of the Department of Environmental Conservation, New York State Department of State, and New York State Energy Research and Development Authority ("NYSERDA") (collectively hereinafter "the State defendants") also move to dismiss on Eleventh Amendment grounds. The Honorable Margo K. Brodie referred this matter to me for a Report and Recommendation in accordance with 28 U.S.C. § 636(b). For the reasons set forth below, it is respectfully recommended that defendant BOEM's motion to dismiss should be granted and that the State defendants, NYPA, and LIPA's motions to dismiss should be granted in part. The Court should

---

[2] Throughout the verified complaint and petition, plaintiffs refer to themselves as "Petitioner-Plaintiffs" or "Petitioners." The Court will refer to them as "plaintiffs."

not exercise supplemental jurisdiction over the remaining state law claims but said claims should be remanded to state court.

## BACKGROUND[3]

Plaintiffs challenge the development and construction of an Energy Center on an undeveloped portion of Jones Beach State Park.[4] Compl. ¶ 3. The development plans call for destruction of an existing structure and portions of "the west end" field, including an area offering views of the sunrise, and the construction of a 13,000-15,000 square foot Energy Education Center and outdoor exhibit space. Id. Plaintiffs assert that the center will require parking restrictions and closures of parts of the area to the general public. Id. It is alleged that defendants NYPA and LIPA will use the center "to conduct energy initiative marketing, and technology education." Id. ¶ 4. Plaintiffs assert that the State defendants, NYPA, and LIPA failed to recognize the interests of park users, disregarded legal requirements for public review, and are seeking to aid the development of offshore wind-turbine power plants. Id. ¶ 6. Plaintiffs proffer that "the whole reason the project exists is to support and advance development of wind-turbine power-generating plants in federal waters." Id. ¶ 286. They suggest that the Energy Center's construction is intended to "facilitate land easements…and alterations to the land illegitimately influencing visual impact studies...such that the…project can be considered 'development activity' regulated by BOEM." Id. Further, plaintiffs aver that the reason the Jones Beach State Park location was chosen is because "authorities, upon belief, wish to use this Jones Beach park

---

[3] All facts are taken from plaintiffs' Verified Petition and Complaint filed at ECF No. 1-1.

[4] Development and construction of the Energy Education Center at Jones Beach is complete, and the center is open. Def. BOEM's Reply Mem. 3 n.2, ECF No. 84; During Climate Week, Governor Cuomo Announces Opening of Energy & Nature Education Center at Jones Beach State Park, (Sept. 25, 2020), https://www.governor.ny.gov/news/during-climate-week-governor-cuomo-announces-opening-energy-nature-education-center-jones-beach.

land to route federal-water wind-turbine power plant cables and wish to convert a portion of Jones Beach State Park at the west end to an industrial operations site to support these power plants." Id. ¶ 287. Plaintiffs allege that BOEM is implicated because it is the federal agency, within the Department of the Interior, which is authorized to regulate offshore energy exploration on the Outer Continental Shelf, including renewable energy.[5] See 43 U.S.C. § 1337; 30 C.F.R. § 500 *et. seq.*

According to plaintiffs, the area of Jones Beach State Park at issue is a serene landscape, providing opportunities for birdwatchers, photographers, and people seeking to enjoy the beauty of the outdoors. Id. ¶ 8. The area is home to a diverse collection of flora and fauna, including rare and endangered species. Id. ¶ 11. This natural splendor is threatened by the Energy Center, which plaintiffs view as a precursor to the eventual taking of parkland for use as "an industrial site to support offshore power plants." Id. ¶ 13. They profess that "their ocean views from the field should not be obliterated in preparation for the study of visual impact of proposed power plants on views…or [to] enable [a power plant] to use more of its leased area without compromising its prospects for award procurement." Id. ¶ 95. Plaintiffs claim that there have been "proposals to transfer power from New Jersey land to New York land via a high voltage DC injection cable through Jones Beach" and they "expect" that a powerplant developer has proposed to use "our park for transmission of power" from an offshore plant. Id. ¶ 139. Plaintiffs assert various federal and state law challenges to the development.

---

[5] The outer continental shelf refers to "all submerged lands lying seaward and outside the areas of lands beneath navigable waters…and of which the subsoil and seabed appertain to the United States and are subject to its jurisdiction and control." 43 U.S.C. § 1331(a).

A. FEDERAL LAW CLAIMS

1. Violation of the Land and Water Conservation Fund Act

The LWCFA, 54 U.S.C. § 200305(f)(3), provides that property improved with funds provided by the Secretary of the Interior under the Act, cannot be used for anything other than "public outdoor recreation use." Plaintiffs allege that "the west end" field at Jones Beach State Park was previously improved with LWCFA funds and the Energy Center proposal runs contrary to the law's mandate that such land may only be used for a recreational purpose. Compl. ¶¶ 19-28. The project, it is feared, will destroy scenic land and disrupt the habitat of the area's wildlife, all without approval of the National Park Service, as required by law. Id. ¶¶ 24-28, 37. To avoid these harms, plaintiffs seek an order enjoining PARKS, LIPA, and NYPA from moving forward with the Energy Center Project. Id. ¶ 47.

2. Violations of the Coastal Barrier Resources Act

Plaintiffs allege that Jones Beach is located on a barrier island and therefore the proposed construction violates provisions of the CBRA banning construction on such islands. Id. ¶¶ 194-97. Plaintiffs allege that as the State defendants receive federal funding, they are required to comply with the CBRA, id. ¶¶ 202-19, and they bring claims against NYPA and the State defendants under the CBRA, id. ¶ 194. Plaintiffs seek a court order declaring the construction of the Energy Center to be a violation of the CBRA and believe that such an order will prevent the proposed development. Id. ¶ 235. Plaintiffs also seek an order requiring BOEM, which they claim has regulatory authority over the Energy Center, to make a consistency determination regarding the plans under the CBRA. Id. ¶ 297.

3.  <u>Violations of the National Historic Preservation Act</u>

The NHPA and its implementing regulations require federal agencies to consider the impact of federal undertakings and federally funded projects on historic property. <u>See</u> 54 U.S.C. § 306101; 36 C.F.R. § 800.1. Plaintiffs allege that Jones Beach State Park, the west end field, and Bay Parkway are all eligible for protection under the NHPA and will all be impacted by the construction of the Energy Center. Compl. ¶¶ 380-81. As a result, plaintiffs believe that PARKS was required, but failed, to coordinate with BOEM for a proper assessment of the Energy Center project under the act. <u>Id.</u> ¶ 397. They further believe that BOEM should be required to "make a consistency determination regarding the project plans" under Section 106 of the NHPA. <u>Id.</u> ¶ 297.

4.  <u>Violations of the National Environmental Policy Act</u>

The purpose of NEPA is to set a national policy of preventing damage to the environment. 42 U.S.C. § 4321 *et. seq*. It directs that all federal agencies generate an environmental impact statement for any "major Federal action" which addresses the impact of the action on the environment. <u>Id</u>. § 4332(C). Plaintiffs allege that the Energy Center satisfies the requirements of a major federal action because they claim it is related to the development of power plants in federal waters, subject to BOEM's jurisdiction. Compl. ¶ 288. Therefore, BOEM should be required to conduct an environmental assessment of the project. <u>Id.</u> ¶¶ 295, 297. Plaintiffs also claim that certain activities at the Energy Center will be federally funded, generating additional need for a NEPA review. <u>Id.</u> ¶¶ 298-302, 337. In addition to an order directed at BOEM, plaintiffs request an order requiring NYSERDA to comply with NEPA. <u>Id.</u> ¶ 338.

5.  <u>Violations of the Coastal Zone Management Act</u>

According to plaintiffs, the CZMA requires that costal development be consistent with a state's Coastal Management Policies and that the development of the Energy Center by PARKS, NYPA, and LIPA runs contrary to New York's policy. <u>Id.</u> ¶¶ 262-63. New York's policy favors recreational water activities which are, plaintiffs assert, pre-empted by the use of Jones Beach land to construct the Energy Center. <u>Id.</u> ¶ 267.  The center's purpose is "energy education and promotional marketing," non-water dependant activities. <u>Id.</u> ¶ 268. In addition, plaintiffs allege that defendants' plan further violates the CZMA because the destruction of parking lots and the closing of certain areas required for construction of the Energy Center will impermissibly curtail public access to "water related recreational resources and facilities." <u>Id.</u> ¶ 274. In response to these alleged violations, plaintiffs request an order declaring the west end field a water related facility, declaring that the Energy Center is not a water dependant use of land, and enjoining construction of the Energy Center. <u>Id.</u> ¶ 280. They also assert that BOEM should be required to make a consistency determination under the CZMA. <u>Id.</u> ¶ 297.

B. STATE LAW CLAIMS

1.  <u>Challenge to Assessment Under the New York State Environmental Quality Review Act</u>

The New York State Environmental Quality Review Act ("SEQRA") requires governmental decision makers to consider the environmental impact of their decisions. <u>Id.</u> ¶¶ 48-49 (citing <u>Matter of Coca-Cola Bottling Co. v. Bd. Of Estimate of the City of N.Y.</u>, 72 N.Y.2d 674, 679 (1988)). Compliance with the Act requires the completion of an Environmental Assessment Form, a process intended to determine a project's environmental impact. <u>Id.</u> ¶ 50. Plaintiffs assert that defendant PARKS' findings during this review of the Energy Center project are contrary to fact because the project will increase the need for parking, increase noise, require

drilling, require the dumping of soil, result in increased bus traffic, and reduce scenic ocean views. Id. ¶¶ 55-92. They further claim that the use of solar panels as a power source will harm wildlife and that new traffic patterns will disrupt the natural character of the area. Id. ¶¶ 92-107. Plaintiffs also fear that the Energy Center will "spur demand for offshore wind-turbine Power Plant projects," further degrading the areas current status as a natural preserve. Id. ¶ 128. Plaintiffs maintain that these possible consequences not only undermine the SEQRA review but also run contrary to NEPA. Id. ¶¶ 153-54. The review process resulted in the designation of part of the area as a Protected Park Area ("PPA") but plaintiffs believe that this designation is only "subterfuge" and intended to make a future taking of the land for non-park purposes that much easier. Id. ¶¶ 156-57. In response, plaintiffs seek an order declaring the environmental assessment invalid and an injunction halting the project. Id. ¶ 179. For similar reasons, and for failure to follow the proper administrative procedure, plaintiffs seek the NYPA resolution authorizing funding of the project to be "rendered null and void." Id. ¶ 193.

2. Parkland Alienation

Plaintiffs assert a state law claim for Parkland Alienation against PARKS and its commissioner, LIPA, and NYPA under the theory that the defendants' construction of the Energy Center at Jones Beach is impermissible because it is not for an outdoor public recreation purpose. Id. ¶ 236. Plaintiffs claim they are "beneficiaries of a public land trust" and the diversion of public park land for construction of the Energy Center is land alienation and a breach of the public trust. Id. ¶¶ 236-38.

3. <u>State Historic Preservation Act</u> ("SHPA")

Plaintiffs claim PARKS was required to make certain determinations under the SHPA but failed to make them. <u>Id.</u> ¶ 381. They believe that Jones Beach State Park, the west end field, and Bay Parkway are all subject to protection under the act.

4. <u>Violations of the Tidal Wetlands Act</u>

Plaintiffs also bring claims for violations of New York State's Tidal Wetlands Act which they allege requires a permit for construction on land adjacent to a tidal wetland. <u>Id.</u> ¶ 352. They seek a declaration that areas to be affected by the construction of the Energy Center are tidal wetlands, requiring certain actions by the state DEC and its commissioner. <u>Id.</u> ¶ 360. Plaintiffs also seek an injunction, prohibiting PARKS, LIPA, NYPA, and NYSERDA from proceeding with the Energy Center plans. <u>Id.</u> ¶ 361.

5. <u>Public Nuisance</u>

Finally, plaintiffs bring claims against PARKS, NYPA, and LIPA under the theory that the Energy Center is a public nuisance. <u>Id.</u> ¶ 432. They believe that the Energy Center's construction will result in "unreasonable interference with rights common to the general public" because it will significantly impact "public safety, peace, comfort, accessibility, and convenience." <u>Id.</u>

**PROCEDURAL HISTORY**

On June 3, 2019, *pro se* plaintiffs commenced this action in New York Supreme Court, Nassau County seeking both declaratory and injunctive relief. ECF No. 1, ¶ 1. Plaintiffs filed a Notice of Petition and Summons in state Supreme Court on June 7, 2019 requesting a court date. <u>Id.</u> ¶ 3. On June 27, 2019, federal defendant BOEM removed the case to this Court pursuant to

28 U.S.C. 1442(a)(1). Id. BOEM then filed an amended notice of removal on July 10, 2019. [6] ECF No. 7. On July 11, 2019, plaintiff Alena Walters filed a "Letter Opposing 'Amended' Removal to Federal Court." ECF No. 9. The Court construed plaintiff Walters' letter as a motion to remand the case back to Nassau County Supreme Court. ECF No. 12. On August 5, 2019, Judge Brodie referred plaintiff Walters' remand motion to me for a Report and Recommendation. See Electronic Order dated August 5, 2019.

Prior to deciding the remand motion, I conferenced the case and after discussing certain concerns, directed plaintiffs to file a letter stating whether they would voluntarily discontinue this action against defendant BOEM. ECF No. 22. The State defendants, NYPA, and LIPA stated that, if the action was discontinued against BOEM, they would consent to remand this action to state court. See id. On August 12, 2019, two of the *pro se* plaintiffs withdrew from the case entirely, ECF No. 25, and on September 9, 2019, one additional plaintiff voluntarily dismissed his claims against BOEM. ECF No. 41. I recommended that the remand motion should be denied, ECF No. 43, and Judge Brodie adopted my Report and Recommendation, ECF No. 50. The defendants now move to dismiss the action. ECF Nos. 75-77, 81.

## DISCUSSION

### I. FEDERAL DEFENDANT – BOEM

The sole federal defendant, BOEM, moves to dismiss the action under Federal Rule of Civil Procedure 12(b)(1) alleging that the case is not ripe for review and that plaintiffs lack standing. [7] Def. BOEM's Mot. to Dismiss 5-9, ECF No. 82. BOEM also moves to dismiss under

---

[6] Defendant BOEM's amended notice of removal corrected a "ministerial error" in the original notice of removal which cited an inapplicable statutory basis for removal. ECF No. 7, ¶¶ 10-11.

[7] In its reply, BOEM invites the Court to dismiss this case on mootness grounds because construction of the Energy Center has already been completed. Def. BOEM's Reply Mem. 3 n.2, ECF 84. A case is moot when, although a "case-or-controversy" initially existed, a live controversy no longer exists. See Knaust v. City of Kingston, 157 F.3d

Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. Id. at 12-18. The Court must first consider the 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction before addressing other motions. See Rhulen Agency, Inc. v. Ala. Ins. Guar. Ass'n, 896 F.2d 674, 678 (2d Cir. 1990) (citing Bell v. Hood, 327 U.S. 678, 682 (1946)). In support of its position that the Court lacks subject-matter jurisdiction, BOEM points to both the lack of any action, involvement, or decision making on its part and plaintiffs' "speculative allegation" that the Energy Center site may later be used to support offshore wind-turbine power plants. Def. BOEM's Mot. to Dismiss 6, 8, ECF No. 82.

A. Justiciability and Subject-Matter Jurisdiction

The Constitution restricts the power of the federal courts, limiting their jurisdiction by empowering them only to decide genuine "'Cases' or 'Controversies.'" Arizonians for Official English v. Arizona, 520 U.S. 43, 64 (1997) (citing U.S. Const. art. III, § 2, cl. 1). This constitutional limit on federal courts' power gives rise to the justiciability requirements of "standing" and "ripeness." See Spokeo, Inc. v. Robins, 136 S.Ct. 1540, 1547 (2016) ("Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy."); Nat'l Org. for Marriage, Inc. v. Walsh, 714 F.3d 682, 687 (2d Cir. 2013) (explaining that an action must be ripe to be a real controversy). These requirements, if absent, deprive a federal court of subject-matter jurisdiction. See Nat'l Org. for Marriage, Inc., 714 F.3d at 687 (citing Connecticut v. Duncan, 612 F.3d 107, 112 (2d Cir. 2010)) (stating that ripeness is a question of subject matter-jurisdiction); New York v. U.S. Army Corps. of Engineers, 896 F.Supp.2d 180, 189 (E.D.N.Y.

---

86, 87-88 (2d Cir. 1998) (quoting Lewis v. Continental Bank Corp., 494 U.S. 472, 477-78 (1990)). As discussed herein, the Court doubts that a "case or controversy" regarding BOEM existed at any stage of this case and therefore the Court should not dismiss the action on mootness grounds.

2012) (considering the question of standing as one of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1)).

At each stage of a case, the party invoking the court's jurisdiction "'bears the burden of establishing the[] elements' of Article III standing." Carter v. HealthPort Tech., LLC, 822 F.3d 47, 56 (2d Cir. 2016) (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992)). "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice." Id. (internal quotation marks omitted) (quoting Lujan, 504 U.S. at 561). When confronted with a motion to dismiss, courts presume that general allegations encompass the specific facts needed to bring the claim. Id. (internal quotation marks omitted) (quoting Lujan, 504 U.S. at 561). When the challenge to subject-matter jurisdiction is based on the allegations contained in the pleadings, analysis of a motion brought under Rule 12(b)(1) requires the Court to determine "whether the Pleading 'allege[s] facts that affirmatively and plausibly suggest that [the plaintiff] has standing to sue." Id. (quoting Amidax Trading Grp. V. S.W.I.F.T SCRL, 671 F.3d 140, 145 (2d Cir. 2011)). However, the Court "need not 'credit a complaint's conclusory statements without reference to its factual context.'" Amidax Trading Grp., 671 F.3d at 146 (quoting Ascroft v. Iqbal, 556 U.S. 662, 686 (2009)). The Court may also consider evidence outside of the pleadings in resolving the issue. Id. at 145. In matters, such as this one, involving *pro se* plaintiffs, the Court is particularly mindful of its duty to liberally construe the pleadings "however inartfully pleaded." Boykin v. KeyCorp, 521 F.3d 202, 214 (2d Cir. 2008) (internal quotation marks omitted) (quoting Erickson v. Pardus, 551 U.S. 89, 94 (2007)).

1. Ripeness

A case is ripe when it presents a "a real, substantial controversy, not a mere hypothetical question." Nat'l Org. for Marriage, Inc., 714 F.3d at 687 (internal quotation marks omitted)

(quoting AMSAT Cable Ltd. v. Cablevision of Conn., 6 F.3d 867, 872 (2d Cir. 1993)). A claim is not ripe when it depends on some future event, which may never occur. Id. (quoting Thomas v. Union Carbide Agric. Prods. Co., 473 U.S. 568, 580 (1985)). Federal courts may not exercise jurisdiction unless a claim is ripe. See Nutritional Health All. v. Shalala, 144 F.3d 220, 225 (2d Cir. 1998) (citing Abbot Labs v. Gardner, 387 U.S. 136, 148-49 (1967)). In the context of an action seeking a declaratory judgment challenged on ripeness grounds, courts must consider "(1) the fitness of the issues for judicial review, and (2) the injury or hardship to the parties of withholding judicial consideration." Id. (citing Abbot Labs, 387 U.S. at 149.)

Further, a ripeness determination requires analysis of whether a claim is both Constitutionally ripe and prudentially ripe. See Nat'l Org. for Marriage, Inc., 714 F.3d at 687-88 (quoting Simmonds v. INS, 326 F.3d 351, 356-57 (2d Cir. 2003)); N.Y Civil Liberties Union v. Grandeau, 528 F.3d 122, 130 (2d Cir. 2008) (Sotomayor, J.) (quoting Nat'l Park Hosp. Ass'n v. Dep't of Interior, 538 U.S. 803, 808 (2003)). Constitutional ripeness refers to whether a matter presents an actual dispute and finds its origins in Article III's "Case and Controversy" requirement. See Simmonds, 326 F.3d at 357. In this way, constitutional ripeness overlaps with the requirement that a plaintiff must have standing to sue. Grandeau, 528 F.3d at 130 n.8 (quoting Brooklyn Legal Servs. Corp. v. Legal Servs. Corp., 462 F.3d 219, 225 (2d Cir. 2006)). This differs from prudential ripeness which requires a court to determine if a case would be better heard at some later time. Simmonds, 326 F.3d at 357. These categories of ripeness analysis are both designed to protect against a matter's premature adjudication. Id. In the context of a federal agency decision, ripeness review serves "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an

administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." Ohio Forestry Ass'n, Inc. v. Sierra Club, 523 U.S. 726, 732-33 (1998) (internal quotation marks omitted) (quoting Abbot Labs, 387 U.S. 148-49).

   a.   Fitness for Judicial Review

   In considering whether an issue is fit for judicial review, a court must ask whether the matter at hand depends "on future events or may never occur." Grandeau, 528 F.3d at 132 (quoting Simmonds, 326 F.3d at 359). A claim is unripe for review when it is based on "possibilities and proposals" rather than a "concrete plan" or action. Id. (internal quotation marks omitted) (quoting Isaacs v. Bowen, 865 F.2d 468, 477 (2d Cir. 1989)).

   b. Hardship of Withholding Consideration

   The Court must also ask about any hardship to the parties caused by lack of adjudication. Grandeau, 528 F.3d at 134 (quoting Simmonds, 326 F.3d at 359). Possibility of future injury, unless it causes a present harm, is not the type of hardship requiring the Court's immediate consideration. Id. (quoting Marchi v. Bd. Of Coop. Educ. Servs., 173 F .3d 469, 478 (2d Cir. 1999)). The Supreme Court instructs that hardship is not created by a federal agency decision when "they do not command anyone to do anything or to refrain from doing anything; they do not grant, withhold, or modify any formal legal license, power or authority; they do not subject anyone to any civil or criminal liability; they create no legal rights or obligations." See Ohio Forestry Ass'n, Inc., 523 U.S. at 733 (citing United States v. Los Angeles & Salt Lake R. Co., 273 U.S. 299, 309-10 (1927)). In the context of a federal agency decision, courts must consider "(1) whether delayed review would cause hardship to the plaintiffs; (2) whether judicial intervention would inappropriately interfere with further administrative action; and (3) whether the courts would benefit from further factual development of the issues presented." Id.

b.  Analysis

Plaintiffs' instant action seeks an order requiring PARKS, LIPA, and NYPA to submit plans for the Energy Center to BOEM for review and then "requiring BOEM to make a consistency determination regarding the project under the CZMA, LWCFA, CBRA, and Section 106 of the Historic Preservation Act, under the NEPA umbrella, and [to] conduct a NEPA (environmental) review of the project." Compl. ¶ 297. Plaintiffs believe BOEM is appropriately charged with this responsibility because "[t]he whole reason the [Energy Center] project exists is to support and advance development of wind-turbine power-generating plants in federal waters." Id. ¶ 286. Further, plaintiffs point to "proposals to transfer power from New Jersey land to New York land via a high voltage DC injection cable through Jones Beach" and they "expect" that a powerplant developer has proposed to use "our park for transmission of power" from an offshore plant. Id. ¶ 139.

Although at this stage of litigation, the Court must accept all factual allegations in the complaint as true, conclusory allegations are not afforded the same deference. See Amidax Trading Grp., 671 F.3d at 146 (quoting Iqbal, 556 U.S. at 686). Plaintiffs' allegation that the Energy Center is part of an established plan to use the Jones Beach site as a hub for offshore wind-turbines is the hook plaintiffs use to include BOEM in this litigation. However, plaintiffs' 191-page, 477 paragraph complaint provides few facts to support this "mere conclusion." The complaint references appended documents to try to push this conclusory allegation into the realm of plausible fact. See Compl. ¶ 286, Ex. G; ECF 1-1, at 214. One such document, LIPA's Annual Report to the Finance and Audit Committee of the Board of Trustees on Economic Development, only briefly discusses the Energy Center. See id. Although this document discusses using the Energy Center to promote energy efficiency, renewable energy and offshore wind power, see id.,

this simply does not support plaintiffs' conclusion that defendants have a concrete plan to use the site itself as a conduit or support station for offshore power plants falling under BOEM's jurisdiction.[8] Plaintiffs claim that the reasons the Energy Center is located at Jones Beach is because "authorities, upon belief, wish to use this Jones Beach park land to route federal-water wind-turbine power plant cables and wish to convert a portion of Jones Beach State Park at the west end to an industrial operations site to support these power plants." See id. ¶ 287. This is just conjecture on plaintiffs' part, lacking factual support, which the Court cannot accept as true. See Amidax, 671 F.3d at 144 (affirming the district court's dismissal for lack of subject-matter jurisdiction in a case where the complaint was "premised upon conjecture"). Further, mere policy proposals or government rumination about future plans does not make a controversy ripe for this Court's adjudication. See Grandeau, 528 F.3d at 132.

Plaintiffs' basis for asserting the need for BOEM action is premised upon the occurrence of an event – the use of the Jones Beach site as a support facility for offshore wind power plants – that may never occur. Therefore, plaintiffs' claims against BOEM are not ripe for judicial review. Id. at 132 (quoting Simmonds, 326 F.3d at 359) (discussing how an issue is not fit for review when it depends on an event which may never occur). Plaintiffs will face no hardship as a result of BOEM's dismissal from this case as BOEM has not taken any action in connection with the Energy Center. See Ohio Foresty Ass'n, Inc., 523 U.S. at 733 (finding no hardship when challenged agency provisions do not create adverse legal effects). Should facts change and events occur which trigger a real need for action by BOEM, the courts will be available to adjudicate such claims which may arise. However, at this time, plaintiffs' claims against BOEM are unripe and should be dismissed.

---

[8] Defendant NYPA points out that since the filing of the complaint, two off-shore wind projects have been announced but none are located at Jones Beach. Def. NYPA Mot. to Dismiss 12 n.4, ECF 76-9, at 17 n.4.

2. Standing

Although plaintiffs' claims against BOEM are unripe, the Court will briefly turn to the closely related doctrine of standing. As with ripeness, "standing 'involves both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise.'" Bennett v. Spear, 520 U.S. 154, 162 (1997) (quoting Warth v. Seldin, 422 U.S. 490, 498 (1975)). A plaintiff has standing to bring an action, when he "demonstrate[s] that he has suffered 'injury in fact,' that the injury is 'fairly traceable' to the actions of the defendant, and that the injury will likely be redressed by a favorable decision." Id. (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992)). "Injury in fact" means "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." Donoghue v. Bulldog Investors General Partnership, 696 F.3d 170, 175 (2d Cir. 2012) (quoting Lujan, 504 U.S. at 560-61). In addition to these requirements, Courts also impose prudential standing requirements, including the need for a plaintiff to demonstrate that a claim falls "within the zone of interests protected or regulated by the" statute or provision under which the suit is brought. Bennett, 520 U.S. at 162 (citing Allen v. Wright, 468 U.S. 737, 751 (1984)).

In Bennett, the Supreme Court considered a claim brought by petitioners, two irrigation districts and the operators of two ranches within those districts, who alleged that the Bureau of Reclamation's[9] compliance with a Biological Opinion promulgated by the Fish and Wildlife Service would irreparably damage their use of the reservoirs at issue. Id. at 159-60. Petitioners claimed that they were injured because they used the available water for irrigation, recreation, and for aesthetic purposes. Id. at 160. After finding that petitioners fell within the zone of interest of the statute in issue, the Court found that the alleged injury suffered by petitioners was "fairly

---

[9] The Bureau of Reclamation is a federal agency under the Secretary of the Interior's jurisdiction. Bennett, 520 U.S. at 158-59.

traceable" to the Fish and Wildlife Service's Biological Opinion and that petitioners had standing. Id. at 170-71.

Here, like in Bennett, the plaintiffs claim injury to their "recreational, aesthetic, and naturalist interest." Compl. ¶ 200. However, unlike in Bennett, plaintiff's fail to show how the injury they allege is "fairly traceable" to defendant BOEM. In Bennett, the Supreme Court recognized an affirmative action by the Fish and Wildlife Service, the issuing of its Biological Opinion, as a cause of petitioners' alleged injury. 520 U.S. 170-71 ("The service itself is, to put it mildly, keenly aware of the virtually determinative effect of its biological opinions."). In this case, plaintiffs fail to identify any action on the part of BOEM which may be fairly construed as causing their injury.

In their reply to defendant BOEM's motion to dismiss, plaintiffs suggest that they have standing to bring this suit challenging BOEM's "inaction" in this matter under the Administrative Procedure Act ("APA"). Pls.' Reply to Def. BOEM's Mot. 20, ECF 85-1. Plaintiffs point to the fact that under the APA, agency action also includes an agency's "failure to act." Id. (citing 5 U.S.C. § 551(13). Although not expressly raised in the complaint, in light of plaintiffs' *pro se* status, the Court will construe their claims as challenging BOEM's inaction under the APA. See Alexander v. United States Post Office, 416 F.Supp.3d 202, 204 (E.D.N.Y. 2017) (construing a *pro se* complaint to raise the strongest possible claim). However, even if the Court were to accept BOEM's inaction as the basis for plaintiffs' standing, plaintiffs' claims still fail to show "an actual or imminent injury" as required. Plaintiff's lack standing for the same reason that their claims are unripe: because their claims are based on their hypothetical and speculative belief that the Energy Center is a precursor to the creation of an off-shore wind-turbine power plant facility at or connected to Jones Beach State Park. See Nat'l Org. for

Marriage, Inc., 714 F.3d 682 at 688 (citing Lujan, 504 U.S. at 560) ("Constitutional ripeness, in other words, is really just about the first Lujan factor – to say a plaintiff's claim is constitutionally unripe is to say the plaintiff's claimed injury, if any, is not 'actual or imminent," but instead 'conjectural or hypothetical.'"). For the same reason that plaintiffs' claims against BOEM are unripe, plaintiffs also lack standing.

Finally, plaintiffs incorrectly conflate the requirement that this court possess subject-matter jurisdiction with BOEM's previously recognized statutory right to remove this matter to federal court. See Pls.' Reply to Def. BOEM's Mot. 15, ECF 85-1. As the Court held previously, the federal removal statute invoked in this case permitted defendant BOEM to remove this case to federal court. See ECF No. 50. The removal statute, 28 U.S.C. 1442(a)(1), does not independently confer jurisdiction on the Court to adjudicate an action. The Court still must assure itself at all stages of litigation that the exercise of its jurisdiction is proper. See Wynn v. AC Rochester, 273 F.3d 153, 157 (2d Cir. 2001) (citing Bender v. Williamsport Area Sch. Dist., 475 U.S. 543, 541 (1986) (stating that jurisdiction is a non-waivable prerequisite and the Court must find that jurisdiction exists before deciding a case)).

Since plaintiffs lack standing to proceed against BOEM and their claims are not ripe, their claims against BOEM should be dismissed without prejudice. See Katz v. Donna Karen Co., L.L.C., 872 F.3d 114, 116 (2d Cir. 2017) (explaining that when a case is dismissed for lack of subject-matter jurisdiction, the dismissal must be without prejudice). As the Court lacks subject-matter jurisdiction over this matter, BOEM's other defenses should not be considered. See Rhulen Agency, Inc., 896 F.2d at 678.

II.  STATE DEFENDANTS, NYPA, AND LIPA

Plaintiffs assert numerous claims against the State defendants, NYPA, and LIPA under federal and state law, seeking declaratory and injunctive relief. Compl. ¶¶ 1-2. The State defendants respond that many of plaintiffs' claims are barred by the Eleventh Amendment. State Defs.' Mot. to Dismiss 4-6, ECF No. 77-1. NYPA and LIPA[10] both aver that the Court lacks subject-matter jurisdiction because the plaintiffs fail to adequately allege standing.[11] LIPA Mot. to Dismiss 13-14, ECF No. 75-2; NYPA Mot. to Dismiss 5-7, ECF No. 76-9. The State defendants, NYPA, and LIPA all assert that there is no private right of action under any of the federal statutes upon which plaintiffs rely.[12] State Defs.' Mot. to Dismiss 6-8; LIPA Mot. to Dismiss 6-8; NYPA Mot. to Dismiss 9-12.

A. New York State and Its Agencies are Immune Under the Eleventh Amendment

Generally, "[t]he Eleventh Amendment grants a State immunity from suit in federal court by citizens of other States…and by its own citizens as well." Lapides v. Bd. of Regents of Univ. Sys. of Ga, 535 U.S. 613, 616 (2002) (citing Hans v. Louisiana, 134 U.S. 1 (1890)). The Amendment also generally bars suits against state agencies and officials when sued in their official capacity. Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 101-02 (1984). For these reasons, in a suit brought against a state, a federal court may not award retrospective relief

---

[10] LIPA states that the alleged absence of standing requires dismissal under Rule 12(b)(6) for failure to state a claim and that the lack of a private right of action requires dismissal for lack of subject matter jurisdiction. LIPA Mot. to Dismiss 6, 13. However, standing is dealt with under Rule 12(b)(1) as an issue of subject-matter jurisdiction, see Carter, 822 F.3d at 56-57, and the lack of a private right of action results in a failure to state a claim under Rule 12(b)(6), see Fair v. Verizon Commc'n Inc., 621 Fed. Appx. 52, 53 (2d Cir. 2015) (summary order) (collecting cases).

[11] NYPA and LIPA both also move to dismiss on the basis of improper service pursuant to FED. R. CIV. P. 12(b)(5). Since the Court recommends dismissal of all of the federal claims and remand to state court, it does not address the service issue which can be corrected and/or adjudicated in state court.

[12] As cited previously, construction of the Energy Center is complete. The Court is surprised that the State defendants, NYPA, and LIPA did not join BOEM in raising mootness as a ground for dismissal. See supra note 7.

or relief for past damages. Ward v. Thomas, 207 F.3d 114, 119 (2d Cir. 2000) (citing Edelman v. Jordan, 415 U.S. 651, 663 (1974)).

There are three exceptions to a state's Eleventh Amendment immunity. Tiraco v. N.Y. State Bd. Of Elections, 963 F. Supp. 2d 184, 191-92 (E.D.N.Y. 2013). First, a state may waive immunity and consent to suit in federal court. Pennhurst State Sch. & Hosp. 465 U.S. at 99 (citing Clark v. Barnard, 108 U.S. 436, 447 (1883)). Second, Congress may, in certain circumstances, lift the states' immunity from suit when it states its unequivocal intention to do so. Id. (first citing Fitzpatrick v. Bitker, 427 U.S. 445 (1976); then citing Quern v. Jordan, 440 U.S. 332, 342 (1979)). Third, in Ex Parte Young, 209 U.S. 123 (1908), the Supreme Court held that the Amendment does not bar prospective declaratory or injunctive relief against state officials alleged to be in violation of federal law. Tiraco, 963 F. Supp. 2d at 192 (citing State Emps. Bargaining Agent Coal v. Rowland, 494 F.3d 71, 95 (2d Cir. 2007)).

There are limits to these three exceptions. In cases where plaintiffs seek declaratory or injunctive relief, such relief is only available against a state official who must be specifically named. Id. at 192-93 (quoting Santiago v. N.Y. State Dep't of Corr. Servs., 945 F.2d 25, 32 (2d Cir. 1991)). Also, the Eleventh Amendment does not permit a federal court to grant equitable relief when plaintiffs allege the state, its agencies, or officials have violated *state* law. Pennhurst State Sch. & Hosp. 465 U.S. at 106 ("[I]t is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials how to conform their conduct to state law.").

Many of plaintiffs' claims in the instant action are barred by the Eleventh Amendment. First, the Court is unaware of any waiver by the state of its Eleventh Amendment immunity from suit under the statutes cited by plaintiffs. Second, plaintiffs do not point to, and the Court is

unable to locate, a stated intent by Congress to abrogate New York's Eleventh Amendment immunity from suit under any of the federal statutes at issue in this case. See Pennhurst State Sch. & Hosp. 465 U.S. at 99 (citing Fitzpatrick v. Bitker, 427 U.S. 445 (1976)) (discussing the need for congress to expressly abrogate Eleventh Amendment immunity). In addition, although it is difficult to decipher the exact form of relief sought by plaintiffs, it is clear that they seek declaratory and injunctive relief against state agencies and officials under both federal and state statutes. Compl. ¶¶ 1-2. To the extent that relief is sought under state law, this Court is barred by the Eleventh Amendment from considering those claims. See Pennhurst State Sch. & Hosp. 465 U.S. at 106. Furthermore, the Eleventh Amendment bars this Court from considering claims for declaratory or injunctive relief against all of the state agencies named as defendants. See Tiraco, 963 F. Supp. 2d at 192-93. If at all, the Court may only consider claims for declaratory and injunctive relief under federal law against the individual state officials named as defendants. Id.

B.  Plaintiffs' Standing Against NYPA and LIPA

Both NYPA and LIPA allege that plaintiffs lack standing. Their attack on plaintiffs' standing focuses exclusively on a failure to adequately allege injury. See Def. LIPA's Mot. to Dismiss 13-14, ECF No. 75-2; Def. NYPA's Mot. Dismiss 5-7 ECF No. 76-9.

Under the Supreme Court's standing jurisprudence, plaintiffs in environmental cases adequately allege sufficient injury for the purposes of standing when they claim "they use the affected area and are persons 'for whom the aesthetic and recreational values of the area will be lessened' by the challenged activity." Friends of the Earth, Inc. v. Laidlaw Envir. Servs., Inc., 528 U.S. 167, 183 (2000) (quoting Sierra Club v. Morton, 405 U.S. 727, 735 (1972)). Plaintiffs' complaint appears very cognizant of the need to plead standing. They devote an entire section of the complaint to a section entitled "standing" and quote from the Supreme Court's seminal Lujan

decision to bolster their position. Compl. ¶¶ 476-77. The complaint, while not specifying how often plaintiffs visit Jones Beach or alleging a specific intent to return, contains sprinkled references to their interests in the affected area. For example, they state "[p]etitioners do not think their ocean views from the field should be obliterated in preparation for the study of visual impact of proposed power plants," id. ¶ 95, refer to the area as "our park," id. ¶ 139, say they have a "stated interest in preventing further development," id. ¶ 199, claim to be "beneficiaries of a public land trust," id. ¶ 237, and that "[t]he project poses harm to Plaintiff's (sic) aesthetic and recreational interests because it will cause changes averse (sic) to the character of the park," id. ¶ 257.

In analyzing standing in this case brought by *pro se* plaintiffs, the Court must construe the complaint liberally and hold the plaintiffs to "less stringent standards than formal pleadings drafted by lawyers." Boykin, 521 F.3d at 214 (internal quotation marks omitted) (quoting Erickson, 551 U.S. at 94). When applying this more liberal construction to *pro se* plaintiffs' pleadings herein, plaintiffs' claims against NYPA and LIPA should not be dismissed for lack of standing.

C.  Plaintiffs Fail to State a Claim under Federal Law

Under Federal Rule of Civil Procedure 12(b)(6), unless a claim presents plausible factual grounds upon which relief can be granted, it must be dismissed. Lynch v. City of New York, 952 F.3d 67, 74 (2d Cir. 2020) (quoting Iqbal, 556 U.S. at 678). Claims brought pursuant to federal statutes which do not create private rights of action are subject to dismissal for failure to state a claim. See Fair v. Verizon Commc'n Inc., 621 Fed. Appx. 52, 53 (2d Cir. 2015) (summary order) (citing Republic of Iraq v. ABB AG, 768 F.3d 145, 171 (2d Cir. 2014)). "Private rights of action to enforce federal laws must be created by Congress." Alexander v. Sandoval, 532 U.S. 275, 286

(2001). In looking for a private right of action, the analysis must include a determination of "whether [a statute] … displays an intent to create not just a private right but a private remedy." Id. (citing Transamerica Mortg. Advisors, Inc. v. Lewis, 444 U.S. 11, 15 (1979)). Courts look to the "text and structure" of a federal law when making this determination. George v. N.Y.C. Dept. of City Planning, 436 F.3d 102, 103 (2d Cir. 2006) (internal quotation marks omitted) (quoting Sandoval, 532 U.S. at 288).

The federal statutes relied upon by plaintiffs do not provide for a private right of action. These federal statutes include, as far as the Court can tell, the CBRA, the LWCFA, the CZMA, NEPA, and the NHPA. Compl. ¶¶ 1-2. The Second Circuit has explicitly held that the CZMA does not provide a private right of action, see George, 436 F.3d at 103-04 (noting that its finding about the CZMA brings it in line with other circuits and district courts), and our sister courts and other circuits have found the same regarding the NHPA, see e.g., Cotz v. Gutierrez-Scaccetti, No. 19-CV-22075(MAS)(ZNQ), 2020 WL 1284755, at *5 (D.N.J. Mar. 18, 2020) (collecting cases finding no private right of action under the NHPA); Friends of Hamilton Grange v. Salazar, No. 08-CV-5220(DLC), 2009 WL 650262, at * 21 (S.D.N.Y. Mar. 12, 2009) (dismissing claims brought under the NHPA after finding that it does not provide for a private right of action), and the LWCFA, see e.g., Friends of Roeding Park v. City of Fresno, 848 F. Supp. 2d 1152, 1160 (E.D. Cal. 2012) (stating that it is "well-accepted" that there is no private right of action under the LWCFA). Several Circuits recognize that NEPA does not provide a private right of action. See e.g., Maiden Creek Assocs., L.P. v. U.S. Dep't of Transp., 823 F.3d 184, 189 (3d Cir. 2016) (noting the lack of a private right of action in NEPA); Karst Env't Educ. & Prot. Inc. v. E.P.A., 475 F.3d 1291, 1295 (D.C. Cir. 2007) (stating that challenges under NEPA must be brought pursuant to the APA because NEPA provides no private right of action).

Although, as both the State defendants and BOEM point out, there does not appear to be any judicial authority discussing a private right of action under the CBRA, State Defs. Mot. to Dismiss 8, ECF No. 77; Def. BOEM's Mot. to Dismiss 18, ECF No. 82, the text of the statute itself does not support such a finding. See 16 U.S.C. § 3501 *et. seq*. The absence of a private right of action under all of these federal statutes requires dismissal of plaintiffs' federal claims.

D.  Plaintiffs' Article 78 Petition and Remaining State Law Claims Should Be Remanded to State Court

The federal claims raised by plaintiffs fail for the reasons discussed *supra*, leaving only plaintiffs' state law claims, including claims under New York Civil Practice Law and Rules ("C.P.L.R.") Article 78. Throughout their complaint and opposition to defendants' motions, plaintiffs aver that they bring this action under C.P.L.R. Article 78. Compl. ¶ 2; Pl.'s Resp. to State Def. Mot. to Dismiss 4, ECF No. 86. Plaintiffs point to Article 78 as a mechanism which allows them to challenge the defendants' actions without hinderance from the Eleventh Amendment or the lack of a private right of action under the federal statutes previously discussed. Pl.'s Resp. to State Def. Mot. to Dismiss 4, 14. An Article 78 is a state law proceeding to challenge the actions of state government agencies and officials. See C.P.L. R. § 7803.

Although a district court may exercise supplemental jurisdiction over related state law claims presented in an action, 28 U.S.C. § 1367(a), the court may decline to exercise supplemental jurisdiction once it has dismissed all claims over which it had original jurisdiction, id. § 1367(c)(3). [13] Once all federal claims in a case are dismissed, the district court has

---

[13] Under 28 U.S.C. 1447(c), "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." If the Eleventh Amendment, which bars federal courts from entertaining *state* law claims against the state, its agencies, or its officials, see Pennhurst State Sch. & Hosp. 465 U.S. at 106, is viewed as depriving the Court of subject-matter jurisdiction then it appears remand is mandatory under 28 U.S.C. 1447(c). However, the Supreme Court has stated that "the question whether 'Eleventh Amendment immunity is a matter of subject matter jurisdiction' is one that 'we have not decided.'" Woods v.

discretion to remand an action to state court "upon a determination that retaining jurisdiction over the case would be inappropriate." Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 357 (1988).

A district court's discretion in this area is broad and when considering the exercise of supplemental jurisdiction, the Court should be guided by "factors such as judicial economy, convenience, fairness, and comity." Rodriguez v. City of New York, 535 F. Supp. 2d 436, 444 (S.D.N.Y. 2008) (internal quotation marks omitted) (quoting Nowak v. Ironworkers Local 6 Pension Fund, 81 F.3d 1182, 1191 (2d Cir. 1996)). When a case fails to present a significant federal interest, a district court may improperly exceed its discretion if it chooses to exercise supplemental jurisdiction. See Kolari v. New York-Presbyterian Hosp., 455 F.3d 118, 123 (2d Cir. 2006). Further, several courts in the Second Circuit suggest that a federal court may never properly exercise jurisdiction over Article 78 claims. See Morningside Supermarket Corp. v. New York State Dept. of Health, 432 F. Supp. 2d 334, 346 (S.D.N.Y. 2006) (collecting cases); Cartagena v. City of New York, 257 F. Supp. 2d 708, 710 (S.D.N.Y. 2003) (concluding that federal courts may never entertain Article 78 proceedings because such proceedings may only be brought in state Supreme Court).

Here, the Court should decline to exercise supplemental jurisdiction over all of plaintiffs' remaining claims. This includes plaintiffs' claims under Article 78. These claims should be remanded to state court. See Cohill, 484 U.S. at 357; see also Ortiz v. United Food & Commercial Workers Union, No. 14-CV-743(MKB), 2016 WL 4257348, at *3 (E.D.N.Y. 2016) (citing Carlsbad Tech., Inc v HIF Bio, Inc., 556 U.S. 635, 640 (2009)) (remanding case to state court after declining to exercise supplemental jurisdiction over remaining state law claim).

Rondout Valley Cent. Sch. Dist. Bd. Of Educ., 466 F.3d 232, 238 (2d Cir. 2006) (quoting Wis. Dep't of Corr. V. Schacht, 524 U.S. 381, 391 (1998)).

Plaintiffs' claims related to SEQRA, Parkland Alienation, the state Tidal Wetlands Act, and for public nuisance are more properly heard in state court because they involve matters of state law, are of local importance, and are brought against state agencies and officials. This result strongly fosters "the principle of comity to States," a value favored by the Supreme Court. See Cohill, 484 U.S. at 352. The dismissal of BOEM and the federal law claims from the case eliminates the stated basis for removal and any federal interest. Therefore, the Court should remand this matter to state Supreme Court where it was originally filed.

## CONCLUSION

Accordingly, I respectfully recommend that defendant BOEM's motion to dismiss this action without prejudice should be granted for lack of subject-matter jurisdiction and that the State defendants, NYPA, and LIPA's motions to dismiss should be granted to the extent that all of the federal law claims alleged against them should be dismissed. I further recommend that the Court should decline to exercise supplemental jurisdiction over the remaining state law claims, including the Article 78, SEQRA, SHPA, TWA, parkland alienation, and public nuisance claims, and that those claims should be remanded to New York State Supreme Court, Nassau County.

The Clerk of Court shall mail a copy of this Report and Recommendation to plaintiffs and shall note the mailing on the docket.[14]

## FILING OF OBJECTIONS TO REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen days from service of this Report to file written objections. See Fed. R. Civ. P. 6. Such objections shall be filed with the Clerk of the Court. Any request for an extension of time to file objections must be made within the fourteen-day period.

---

[14] The Clerk of Court is also directed to send plaintiffs the attached copies of all the unreported cases cited herein.

Failure to file a timely objection to this Report generally waives any further judicial review.

Marcella v. Capital Dist. Physicians' Health Plan, Inc., 293 F.3d 42 (2d Cir. 2002); Small v. Sec'y of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989); see Thomas v. Arn, 474 U.S. 140 (1985).


SO ORDERED.


                                                    _____/S/_____
                                                    LOIS BLOOM
                                                    United States Magistrate Judge


Dated: January 6, 2021
       Brooklyn, New York