UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------

HERBERT H. JURIST, SUSAN JOHNSON,
DONALD POWERS, LINDA JURIST, ALENA
WALTERS, ROBERT SLAWSKI, and STEVE
WALTER,

                     Plaintiffs,

           v.

THE LONG ISLAND POWER AUTHORITY,
THE POWER AUTHORITY OF THE STATE OF
NEW YORK, ERIK KULLESEID, *Commissioner
of the New York State Office of Parks Recreation
and Historic Preservation*, THE NEW YORK
STATE OFFICE OF PARKS RECREATION AND
HISTORIC PRESERVATION, THE NEW YORK
STATE DEPARTMENT OF ENVIRONMENTAL
CONSERVATION *("NYS DEC")*, BASIL
SEGGOS, *Commissioner of NYS DEC*, THE
BUREAU OF OCEAN ENERGY
MANAGEMENT, THE NEW YORK STATE
DEPARTMENT OF STATE, and THE NEW
YORK STATE ENERGY RESEARCH AND
DEVELOPMENT AUTHORITY,

                     Defendants.

-------------------------------------------------------------

**MEMORANDUM &ORDER**
19-CV-3762 (MKB) (LB)

MARGO K. BRODIE, United States District Judge:

      Plaintiffs Herbert H. Jurist, Susan Johnson, Donald Powers, Linda Jurist, Alena Walters,

Robert Slawski, and Steve Walter,[1] proceeding *pro se*, commenced the above-captioned action

on June 3, 2019, in the New York Supreme Court, Nassau County, against Defendants the

Bureau of Ocean Energy Management ("BOEM") (a federal agency), the New York State Office

---

     [1]  By Order dated August 22, 2019, the Court granted the request from Plaintiffs
Lawrence Ryan and Marie Ryan to withdraw from the case and terminated them from the case.
(Order dated Aug. 22, 2019.)

of Parks Recreation and Historic Preservation ("Parks"), Parks Commissioner Erik Kulleseid, the New York State Department of Environmental Conservation ("NYS DEC"), NYS DEC Commissioner Basil Seggos, the New York State Department of State, and the New York State Energy Research and Development Authority (collectively, the "State Defendants"), the Long Island Power Authority ("LIPA"), and the Power Authority of the State of New York ("NYPA"). (Notice of Removal ¶ 1, Docket Entry No. 1.) On June 27, 2019, BOEM removed the action to the Eastern District of New York.[2] (*Id.*) Plaintiffs assert claims under various state and federal laws in connection with the construction of an Energy Education Center in Jones Beach State Park. (Verified Pet. & Compl. ("Compl.") ¶¶ 1–3, annexed to Notice of Removal as Ex. A, Docket Entry No. 1-1.)

BOEM, the State Defendants, LIPA, and NYPA separately moved for various reasons to dismiss the action and the Court referred the motions to Magistrate Judge Lois Bloom.[3] By report and recommendation dated January 6, 2021, Judge Bloom recommended that the Court grant Defendants' motions in part and decline to exercise supplemental jurisdiction over the state law claims (the "R&R"). (R&R, Docket Entry No. 88.) Plaintiffs filed objections to the R&R

---

[2] On March 10, 2020, the Court denied a motion to remand the case to state court. (Report and Recommendation dated Oct. 4, 2019 ("Oct. 2019 R&R"), Docket Entry No. 43; Order adopting Oct. 2019 R&R dated Mar. 10, 2020, Docket Entry No. 50.)

[3] (BOEM's Mot. to Dismiss, Docket Entry No. 81; Mem. in Supp. of BOEM's Mot. to Dismiss ("BOEM's Mem."), Docket Entry No. 82; State Defs.' Mot. to Dismiss, Docket Entry No. 77; Mem. in Supp. of State Defs.' Mot. to Dismiss ("State Defs.' Mem."), Docket Entry No. 77-1; LIPA's Mot. to Dismiss, Docket Entry No. 75; Mem. in Supp. of LIPA's Mot. to Dismiss ("LIPA's Mem."), Docket Entry No. 75-2; NYPA's Mot. to Dismiss, Docket Entry No. 76-1; Mem. in Supp. of NYPA's Mot. to Dismiss ("NYPA's Mem."), Docket Entry No. 76-9; Order dated Oct. 12, 2020.)

and Defendants have responded to Plaintiffs' objections.[4]

For the reasons set forth below, the Court adopts the R&R and (1) grants BOEM's motion to dismiss the action without prejudice for lack of subject matter jurisdiction, (2) grants the motions of the State Defendants, LIPA, and NYPA to dismiss Plaintiffs' federal-law claims with prejudice, and (3) declines to exercise supplemental jurisdiction over the remaining state-law claims, and remands those claims to New York State Supreme Court, Nassau County.

## I. Background

### a. Factual background

On June 3, 2019, Plaintiffs commenced an action in the New York Supreme Court, Nassau County, against Defendants. (*See generally* Compl.) Plaintiffs' claims arise from the ongoing construction of an Energy Education Center in Jones Beach State Park. (*Id.* ¶¶ 1–3.) Plaintiffs assert federal-law claims under the Land and Water Conservation Act (the "LWCA"), the Coastal Barrier Resources Act (the "CBRA"), the Coastal Zone Management Act (the "CZMA"), the National Environmental Policy Act (the "NEPA"), and the National Historical Preservation Act (the "NHPA"). (*Id.* ¶¶ 19–47, 194–235, 262–351, 380–431.) In addition, Plaintiffs assert various state-law claims, including violations of the State Environmental Quality Review Act ("SEQRA"), the Tidal Wetlands Act (the "TWA"), and the State Historical Preservation Act (the "SHPA"), as well as state common law claims for breach of public land trust and parkland alienation and public nuisance. (*Id.* ¶¶ 48–193, 236–261, 352–415, 432–475.) Plaintiffs allege that LIPA and NYPA plan to develop Jones Beach State Park, which is a serene

---

[4] (Pls.' Obj. to R&R ("Pls.' Obj."), Docket Entry No. 92; LIPA's Reply in Opp'n to Pls.' Obj. ("LIPA's Reply"), Docket Entry No. 93; State Defs.' Reply in Opp'n to Pls.' Obj. ("State Defs.' Reply"), Docket Entry No. 94; BOEM's Reply in Opp'n to Pls.' Obj. ("BOEM's Reply"), Docket Entry No. 95; NYPA's Reply in Opp'n to Pls.' Obj. ("NYPA's Reply"), Docket Entry No. 96.)

and undeveloped area that is home to "many rare, endangered, and threatened species of animals," and to construct offshore wind turbines that will spoil their enjoyment of the park. (*Id.* ¶¶ 8–15.)

BOEM,[5] the State Defendants,[6] LIPA,[7] and NYPA[8] separately moved to dismiss for

---

[5]  BOEM moved to dismiss, arguing that (1) Plaintiffs' claims against BOEM should be dismissed pursuant to Rule 12(b)(1) because (a) Plaintiffs' claims were unripe and (b) Plaintiffs lacked standing; (2) Plaintiffs' claims should also be dismissed pursuant to Rule 12(b)(6) because (a) the onshore Energy Education Center development to which Plaintiffs object is not in BOEM's regulatory jurisdiction and (b) the federal laws on which Plaintiffs rely do not provide for private rights of action; and (3) any claims against BOEM under Article 78 fail on sovereign immunity grounds. (*See* BOEM's Mem.)

[6]  The State Defendants moved to dismiss, arguing that (1) the Eleventh Amendment barred Plaintiffs' claims against the state and its agencies and any state-law claims brought against the NYS DEC Commissioner and Parks Commissioner, except as to Plaintiffs' claims for injunctive relief under federal law against the Parks Commissioner; (2) the federal laws Plaintiffs allege that Defendants violated do not contain private rights of action; (3) the Court should decline to exercise supplemental jurisdiction over any remaining state-law claims; (4) Plaintiffs' challenge to the Parks Department's determination under SEQRA that construction of the Energy Education Center would not lead to any adverse environmental impacts is time-barred; and (5) Plaintiffs' complaint did not qualify as a short and plain statement of their claim under Rule 8 of the Federal Rules of Civil Procedure. (*See* State Defs.' Mem.)

[7]  LIPA moved to dismiss, arguing that (1) the federal and state statutes that Plaintiff alleges were violated do not contain private rights of action; (2) assuming Plaintiffs were bringing a claim pursuant to Article 78 of the New York Civil Practice Law and Rules ("Article 78") against LIPA, which was not specifically alleged in the Complaint, the Court should decline to exercise supplemental jurisdiction over that remaining state-law claim; (3) Plaintiffs failed to state a claim because (a) their Article 78 action was time-barred, (b) their argument that parkland was being improperly alienated had not been applied to state parks under New York law, only to municipal parks, and (c) they had not stated the elements of a public nuisance claim under New York law; (4) Plaintiffs had not pleaded standing because their Complaint did not show that they would be specifically affected by the building of the Energy Center; (5) Plaintiffs failed to properly serve LIPA; and (6) Plaintiffs' Complaint did not meet the requirements of Rule 8 of the Federal Rules of Civil Procedure. (*See* LIPA's Mem.)

[8]  NYPA moved to dismiss, expressly adopting its co-defendants' arguments and separately arguing that (1) the Court lacks personal jurisdiction because Plaintiffs' service of the Complaint was insufficient; (2) Plaintiffs lack standing because they had not alleged a specific injury; (3) Plaintiffs' challenge to the Energy Center funding determination under SEQRA was

various reasons.  On October 12, 2020, the Court referred the motions to Judge Bloom for a R&R.  (Order dated Oct. 12, 2020.)

### b.    The R&R

In the R&R, Judge Bloom recommended that the Court grant BOEM's motion to dismiss for lack of subject matter jurisdiction and grant in part the motions to dismiss by the State Defendants, LIPA, and NYPA, dismiss the federal-law claims, and decline to exercise supplemental jurisdiction over the remaining state-law claims, instead remanding them to state court.  (R&R 1–2.)

Judge Bloom concluded that Plaintiffs' claims against BOEM are not ripe because they are "premised upon the occurrence of an event — the use of the Jones Beach site as a support facility for offshore wind power plants — that may never occur." (*Id.* at 15–16.)  In addition, Judge Bloom found that Plaintiffs do not have standing to sue BOEM because they do not point to any actual or imminent injury that BOEM's action or inaction might cause.  (*Id.* at 17–19.)

In addressing the State Defendants' claims, Judge Bloom recommended dismissal because the state did not waive Eleventh Amendment immunity, and because there is no statutory basis for concluding that Congress intended to abrogate the State Defendants' Eleventh Amendment immunity under any of the statutes at issue.  (*Id.* at 21–22.)  Judge Bloom noted that under the Eleventh Amendment, the Court cannot grant Plaintiffs relief under state law or consider claims for declaratory or injunctive relief under federal law against the state-agency

---

barred by the applicable statute of limitations; (4) Plaintiffs fail to state a claim because (a) they had not established that they had suffered a particular injury, as was necessary to state a public nuisance claim under New York law, (b) that their parkland alienation claims do not apply to state parks such as the one at issue in this case, and (c) asserting that they seek Article 78 review under the federal statutes they cite does not save Plaintiffs' claims; and (5) Plaintiffs' complaint did not meet the requirements of Rule 8.  (*See* NYPA's Mem.)

defendants. (*Id.* at 22.) In addition, Judge Bloom noted that, "if at all, the Court may only consider claims for declaratory and injunctive relief under federal law against the individual state officials named as [D]efendants." (*Id.*)

As to the motions filed by NYPA and LIPA, Judge Bloom found that Plaintiffs had standing to sue NYPA and LIPA, at least under the applicable liberal pleading standard, based on Plaintiffs' "sprinkled references to their interests in the affected area" and allegations that Plaintiffs used the park and would be injured by the planned development. (*Id.* at 22–23.)

However, Judge Bloom recommended that the Court dismiss Plaintiffs' federal claims against all Defendants for failure to state a claim under federal law because the federal statutes on which Plaintiffs rely — the LWCA, CBRA, CZMA, NEPA, and NHPA — do not provide for private rights of action. (*Id.* at 23–25.) Because only Plaintiffs' state-law claims remained,[9] Judge Bloom recommended that the Court decline to exercise supplemental jurisdiction over the remaining claims and remand the case to New York State Supreme Court, Nassau County. (*Id.*

---

[9] Because Judge Bloom noted that the Court could at most consider claims for declaratory and injunctive relief against Commissioners Kulleseid and Seggos, she did not recommend dismissal of Plaintiffs' federal claims against Commissioners Kulleseid and Seggos on Eleventh Amendment grounds and instead recommended dismissal of all of Plaintiffs' federal claims based on the lack of private causes of action under the federal statutes. (R&R 23–25.) Accordingly, Judge Bloom found that no federal claims remained against any Defendant and therefore recommended remand pursuant to 28 U.S.C. § 1367. *See* 28 U.S.C. § 1367(c)(3) ("[D]istrict courts may decline to exercise supplemental jurisdiction over a claim . . .if . . .the district court has dismissed all claims over which it has original jurisdiction . . . ."); *Pension Benefit Guar. Corp. ex rel. Saint Vincent Cath. Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 727 (2d Cir. 2013) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine — judicial economy, convenience, fairness, and comity — will point toward declining to exercise jurisdiction over the remaining state-law claims." (quoting *Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 305 (2d Cir. 2003))); *see also One Commc'ns Corp. v. JP Morgan SBIC LLC*, 381 F. App'x 75, 82 (2d Cir. 2010) ("If all of a plaintiff's federal claims are dismissed, a district court is well within its discretion to decline to assert supplemental jurisdiction over any state law claims . . . .").

at 25–27.)

     **c.**   **Objections to the R&R**

Plaintiffs make several arguments in their objections to the R&R. (*See* Pls.' Obj.) First, Plaintiffs argue that they are not bringing claims directly under the federal laws invoked in the Complaint but instead are seeking judicial review "of administrative actions rendered under federal law (or required under federal law to be taken)" pursuant to Article 78, and that Defendants' actions may be reviewed under Article 78. (*Id.* at 6–7, 12–13, 15–20.) Second, Plaintiffs argue that New York State waived its sovereign immunity (1) by voluntarily participating in the federal programs at issue, and (2) because the LWCA and other statutes were enacted pursuant to the enforcement clause of the Fourteenth Amendment, and the defense of sovereign immunity does not apply. (*Id.* at 7–8, 13–14, 20–22.) Third, Plaintiffs argue that New York, in its written coastal management policy, made statements "to the effect that citizens are intended to ensure CZMA-mandated compliance of projects with our State's Coastal Management Policy," and that Judge Bloom erred in relying on *George v. New York City Department of City Planning*, 436 F.3d 102 (2d Cir. 2006), which drew support from precedents that have since been abrogated and relied on facts that have since changed. (*Id.* at 9, 34–37.) Fourth, Plaintiffs argue that the Court must remand this case to state court "if any basis upon which dismissal might . . . rest in federal court may produce a different result in state court on any of the defenses raised," because "[d]ismissal on a removed action would have the clear effect of imposing federal requirements on state courts." (*Id.* at 9–10, 44.) Fifth, Plaintiffs argue that Judge Bloom "substantially ignores all claims except those that have been made against BOEM, and appears not to acknowledge the relationship between the federal and state obligations with respect to state agencies," erred in determining standing, redressability, and ripeness, and did not

recognize the procedural injuries Plaintiffs have suffered. (*Id.* at 10.) Sixth, Plaintiffs argue that

the R&R "misinterprets the basis for [their] request for a NEPA review of the Energy Center,"

among other claims. (*Id.*) Finally, Plaintiffs argue that Judge Bloom erred in reading the

Complaint as concerned about "speculative future happenings" — specifically, the construction

of offshore wind plants — when the construction of the Energy Center is currently causing "the

addition of buildings, land modifications, fencing, relocation of public resources, and removal of

the [ocean viewing vantage]," which Plaintiffs predict will "interfer[e] with a future

environmental review of an offshore Energy Facility, to its favor, that will have to be

performed."[10] (*Id.* at 10–11.) Plaintiffs argue that a Massachusetts wind power developer has

"supportive commitments" to use the park for transmission and that a transmission cable

company "submitted an unsolicited application" to BOEM to use Jones Beach "for the siting of

power delivery transmission cabling," (*id.* at 47–48), and that the ongoing construction of the

Energy Center will affect future visual impact and cultural and historic resource studies that must

be completed at the site when BOEM considers the future offshore wind project, (*id.* at 46–48).

### d.    Defendants' response to Plaintiffs' objections

BOEM argues that the Court should adopt the R&R in its entirety because "[a]s the

[R&R] correctly recognizes, BOEM has neither any regulatory jurisdiction over the Energy

Education Center, nor any involvement, control, or responsibility for the project, which Plaintiffs

attempt to challenge." (BOEM's Reply 1.) In addition, BOEM argues that Plaintiffs' objections,

like the Complaint, are "based on speculative expectations about what Jones Beach will be used

for in the future" and on speculation about BOEM's involvement in those future projects, and do

---

[10]    Plaintiffs "make no objection to the recommendation that any requests for NEPA review [of the offshore power plant] be deemed unripe, provided that no plans have been submitted to BOEM for review." (Pls.' Obj. 46.)

not undermine the R&R's conclusion that Plaintiffs' claims are unripe and not fairly traceable to BOEM's actions. (*Id.* at 3–5.) Further, BOEM argues that in assessing subject matter jurisdiction pursuant to Rule 12(b)(1), Judge Bloom properly looked outside the pleadings to the May 26, 2020 Declaration of Lucas B. Feinberg, which established that BOEM was not involved in the Energy Center project, and while Plaintiffs challenge Judge Bloom's reliance on the declaration at this stage of the litigation, Plaintiffs do not contest its accuracy. (*Id.* at 8–9.) Finally, BOEM argues that Plaintiffs lack standing for the same reasons that their claim is unripe. (*Id.* at 9.)

The State Defendants argue that the Court should adopt the R&R in full because (1) the federal statues Plaintiff invokes include no private right of action, (2) Plaintiffs may not raise violations of federal laws under Article 78 when the federal laws in question do not provide a private right of action, (3) *George v. New York City Department of City Planning*, 436 F.3d 102, 103 (2d Cir. 2006), which held that the CZMA does not contain a private right of action, is binding precedent regardless of Plaintiffs' arguments, and (4) the Fourteenth Amendment does not automatically abrogate the Eleventh Amendment immunity of states, as Plaintiffs argue, and New York State did not implicitly waive its sovereign immunity because sovereign immunity must be expressly and unequivocally waived. (State Defs.' Reply.)

LIPA argues that the Court should adopt the R&R in its entirety because Plaintiffs' objections "merely repeat arguments from Plaintiffs' opposition briefs with respect to LIPA's motion to dismiss," and notes that "Plaintiffs have not objected to the R&R's recommendation to decline supplemental jurisdiction." (LIPA's Reply 1.) In addition, LIPA argues that "Plaintiffs confusingly appear to rescind their withdrawal of their CZMA claim" in their objections and "should not be allowed to do so at this juncture." (*Id.* at 1 n.1.)

NYPA argues that the Court should adopt the R&R in full because Judge Bloom correctly concluded that the federal statutes Plaintiff relied on do not create a private right of action and that Plaintiffs' argument "that the federal claims should not be dismissed because they are merely seeking Article 78 review under these federal statutes" does not undermine this conclusion. (NYPA's Reply 2–3.) NYPA notes that Plaintiffs sought declaratory and injunctive relief under the CZMA and CBRA, not Article 78 review, and that New York courts have affirmed the dismissal of Article 78 proceedings brought under federal laws that lacked private rights of action. (*Id.* at 3.) NYPA further argues that the Court should reject Plaintiffs' attempt to amend the Complaint to add a new cause of action. (*Id.* at 3–4.) Finally, NYPA argues that remand to state court is proper and notes that Plaintiffs did not object to the portion of the R&R recommending remand. (*Id.* at 4.)

## II. Discussion

### a. Standards of review

#### i. Report and recommendation

A district court reviewing a magistrate judge's recommended ruling "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). When a party submits a timely objection to a report and recommendation, the district court reviews *de novo* the parts of the report and recommendation to which the party objected. *Id.*; *see also United States v. Romano*, 794 F.3d 317, 340 (2d Cir. 2015). The district court may adopt those portions of the recommended ruling to which no timely objections have been made, provided no clear error is apparent from the face of the record. *See John Hancock Life Ins. Co. v. Neuman*, No. 15-CV-1358, 2015 WL 7459920, at *1 (E.D.N.Y. Nov. 24, 2015) (applying clear error when no objections to the magistrate judge's

report and recommendation were filed).  The clear error standard also applies when a party makes only conclusory or general objections.  Fed. R. Civ. P. 72(b)(2) ("[A] party may serve and file specific written objections to the [magistrate judge's] proposed findings and recommendations."); *see also Colvin v. Berryhill*, 734 F. App'x 756, 758 (2d Cir. 2018) ("Merely referring the court to previously filed papers or arguments does not constitute an adequate objection under . . . Fed. R. Civ. P. 72(b)." (quoting *Mario v. P & C Food Mkts., Inc.*, 313 F.3d 758, 766 (2d Cir. 2002))); *Benitez v. Parmer*, 654 F. App'x 502, 503–04 (2d Cir. 2016) (holding that "general objection[s] [are] insufficient to obtain *de novo* review by [a] district court").

Whether clear error review or *de novo* review applies when an objecting party reiterates the arguments made to the magistrate judge is unclear.  While the Second Circuit has suggested that clear error review is appropriate if a party's objection to a magistrate judge's report and recommendation repeats arguments already presented to and considered by the magistrate judge, *see Mario*, 313 F.3d at 766 ("Merely referring the court to previously filed papers or arguments does not constitute an adequate objection under either Fed. R. Civ. P. 72(b) . . . ."), the Second Circuit has more recently stated that it is "skeptical" that the clear error standard would be appropriate when the objection is based on a previously asserted argument, *see Moss v. Colvin*, 845 F.3d 516, 520 n.2 (2d Cir. 2017) ("[W]e are skeptical that clear error review would be appropriate in this instance, where arguably 'the only way for [the plaintiff] to raise . . . arguments [on that point] [was] to reiterate them.'" (third and fourth alterations in original) (first quoting *Watson v. Geithner*, No. 11-CV-9527, 2013 WL 5441748, at *2 (S.D.N.Y. Sept. 27, 2013); and then citing 28 U.S.C. § 636(b)(1))); *see also Harewood v. N.Y.C. Dep't of Educ.*, No. 18-CV-5487, 2021 WL 673476, at *6 (S.D.N.Y. Feb. 22, 2021) ("[W]hen the objections simply

reiterate previous arguments or make only conclusory statements, the court should review such portions of the report only for clear error." (first citing *Dickerson v. Conway*, No. 08-CV-8024, 2013 WL 3199094, at *1 (S.D.N.Y. June 25, 2013); and then citing *Kirk v. Burge*, 646 F. Supp. 2d 534, 538 (S.D.N.Y. 2009))); *Castorina v. Saul*, No. 19-CV-991, 2020 WL 6781078, at *1 (S.D.N.Y. Nov. 18, 2020) ("While courts in this [d]istrict sometimes state that objections that 'simply reiterate [the] original arguments' merit only clear error review, this rule lacks support in either 28 U.S.C. § 636(b)(1)(C) or Rule 72(b)(2) of the Federal Rules of Civil Procedure. The Second Circuit has expressed similar skepticism." (second alteration in original) (citations omitted)).

### ii.  Motion to dismiss

In reviewing a motion to dismiss under Rule 12(b)(6), a court must construe the complaint liberally, "accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Kim v. Kimm*, 884 F.3d 98, 103 (2d Cir. 2018) (quoting *Chambers v. Time Warner Inc.*, 282 F.3d 147, 152 (2d Cir. 2002)); *see also Tsirelman v. Daines*, 794 F.3d 310, 313 (2d Cir. 2015) (quoting *Jaghory v. N.Y. State Dep't of Educ.*, 131 F.3d 326, 329 (2d Cir. 1997)). A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.

### b. Unopposed portions of the R&R

Plaintiffs do not object to Judge Bloom's recommendation that the Court decline to exercise supplemental jurisdiction over the remaining state-law claims and instead remand those claims to state court.[11] Nor do Plaintiffs object to the legal conclusion that the federal statutes under which they assert their claims contain no express private right of action.[12] Having reviewed these recommendations for clear error and finding none, the Court adopts these recommendations pursuant to 28 U.S.C. § 636(b)(1).

### c. Plaintiffs' claims against BOEM are not ripe

Plaintiffs' claims against BOEM, which are based on their prediction that the Energy Center project will be used "to support and advance development of wind-turbine power-generating plants in federal waters," (Compl. ¶ 286), are not ripe because the allegations are too conjectural to support a cause of action.

---

[11] In their objections, Plaintiffs argue that the Court should remand rather than dismiss the case so that any difference between state and federal standards should not prove decisive. The Court dismisses the claims on jurisdictional grounds without prejudice. *See Katz v. Donna Karen Co.*, 872 F.3d 114, 116 (2d Cir. 2017) (remanding because "a complaint must be dismissed without prejudice where the dismissal is due to the court's lack of subject matter jurisdiction"); *see also He v. Off. of N.Y.C. Comptroller*, 833 F. App'x 921, 921 (2d Cir. 2021) (same).

[12] Plaintiffs appear to argue that they may sue under the CZMA because New York State has asked its citizens to assist in furthering compliance with its Coastal Management Policy. (Pls.' Obj. 9.) In *George*, the Second Circuit found that CZMA does not create a private right of action against city agencies. *George v. N.Y.C. Dep't of City Planning*, 436 F.3d 102, 104 (2d Cir. 2006) (holding that "the [CZMA] creates no private right of action against city agencies" and noting that "[d]istrict courts within the Second Circuit have likewise declined to find a private right of action in the Act"). To the extent Plaintiffs are arguing that the Court should not apply *George*, the Court notes that *George* is binding precedent. Further, to the extent Plaintiffs are attempting in their objections to the R&R to rescind the withdrawal of their CZMA claim against LIPA, the Court declines to consider that claim because it was withdrawn in Plaintiffs' opposition to LIPA's motion to dismiss. (*See* Pls.' Opp'n to LIPA's Mot. 42, Docket Entry No. 75-9 ("[Plaintiffs] withdraw all CZMA claims against LIPA.").) Moreover, the Court notes that such a claim would nevertheless fail because the CZMA contains no private right of action.

Ripeness is a jurisdictional inquiry, and courts are obliged to consider ripeness before addressing the merits of a claim. *See Islamic Cmty. Ctr. for Mid Westchester v. City of Yonkers Landmark Pres. Bd.*, 742 F. App'x 521, 523 (2d Cir. 2018) (stating that "[r]ipeness is a jurisdictional inquiry," such that a court cannot entertain a plaintiff's claims unless an issue is ripe (quoting *Murphy v. New Milford Zoning Comm'n*, 402 F.3d 342, 347 (2d Cir. 2005))). The court "must presume that [it] cannot entertain [a plaintiff's] claims 'unless the contrary appears affirmatively from the record.'" *Murphy*, 402 F.3d at 347 (quoting *Renne v. Geary*, 501 U.S. 312, 316 (1991)). For a claim to be ripe, "it must present a real, substantial controversy, not a mere hypothetical question." *Neroni v. Zayas*, 663 F. App'x 51, 53 (2d Cir. 2016) (quoting *Nat'l Org. for Marriage, Inc. v. Walsh*, 714 F.3d 682, 687 (2d Cir. 2013)); *Nat'l Org. for Marriage, Inc.*, 714 F.3d at 688 ("Constitutional ripeness, in other words, is really just about the first *Lujan* factor — to say a plaintiff's claim is constitutionally unripe is to say the plaintiff's claimed injury, if any, is not 'actual or imminent,' but instead 'conjectural or hypothetical.'" (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992))). "In deciding whether an agency's decision is, or is not, ripe for judicial review" courts "consider: (1) whether delayed review would cause hardship to the plaintiffs; (2) whether judicial intervention would inappropriately interfere with further administrative action; and (3) whether the courts would benefit from further factual development of the issues presented." *Ohio Forestry Ass'n, Inc. v. Sierra Club*, 523 U.S. 726, 733 (1998); *see also Murphy*, 402 F.3d at 347 (explaining that in determining whether a case is ripe, a court is to "evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration"). A claim is not ripe "if it depends upon contingent future events that may or may not occur as anticipated, or indeed may not occur at all." *Kurtz v. Verizon N.Y., Inc.*, 758 F.3d 506, 511 (2d Cir. 2014).

Plaintiffs allege that the current development of the Energy Center is a prelude to the offshore wind power project which they seek to challenge. (Compl. ¶ 287 ("[T]hese authorities, upon belief, wish to use this Jones Beach park land to route federal-water wind-turbine power plant cables and wish to convert a portion of Jones Beach State Park at the west end to an industrial operations site to support these power plants.").) Plaintiffs contend that changes currently being made to the park in the construction of the Energy Center, which is near land "desired for the industrial site," (*id.*), will affect BOEM's review of an offshore wind power plant that specific developers hope to build, (*id.* ¶¶ 282–292; Pls.' Obj. 46–49). Plaintiffs, in effect, argue that the possible alterations to the park that are currently being considered in order to build the Energy Center will affect BOEM's possible evaluation of the impact of offshore wind power on the park when companies that are interested in using the park as a site for wind power transmission seek BOEM's approval. Thus, Plaintiffs are not challenging a plan to build an offshore wind farm but rather what they perceive as conduct that could impact how BOEM evaluates such a plan if and when one is presented. *See N.Y. C.L. Union v. Grandeau*, 528 F.3d 122, 132 (2d Cir. 2008) ("[I]n *Isaacs v. Bowen*, 865 F.2d 468 (2d Cir. 1989), this Court deemed unripe a challenge to a proposed policy change in Medicare administration. [The Second Circuit] explained that [the] plaintiffs' challenge was 'directed at possibilities and proposals only, not at a concrete plan which has been formally promulgated and brought into operation.'" (quoting *Isaacs*, 865 F.2d at 478)). As acknowledged by Plaintiffs, before Plaintiffs can dispute a specific offshore wind power project with more than hypothetical features, potential developers will need to submit plans to BOEM, and BOEM will need to conduct a review of their plans. (Pls.' Obj. 48 (explaining that plans are "expected to be submitted soon" and describing future review by BOEM).) Therefore, the plans Plaintiff challenges are too speculative for this Court to

review, and Plaintiffs' challenge, which is based on their expectations about BOEM's future involvement, is unripe.[13] *See Ohio Forestry Ass'n, Inc.*, 523 U.S. at 733–34 (holding that the Sierra Club's challenge to a Forest Service land management plan that involved logging and clearcutting was unripe where, before the plan came to fruition, the Forest Service would have to "focus upon a particular site, propose a specific [tree] harvesting method, prepare an environmental review, permit the public an opportunity to be heard, and (if challenged) justify the proposal in court," and further holding that the Sierra Club could "bring its legal challenge at a time when harm is more imminent and more certain").

### d. Plaintiffs do not have a federal cause of action

Plaintiffs cannot sue under any of the federal statutes they invoke because those statutes do not provide for a private cause of action, nor can they rely on Article 78 to save their federal claims.

### i. The federal statutes do not provide for a private cause of action

As Judge Bloom found in the R&R, the federal statutes Plaintiffs invoke — the LWCA, CBRA, CZMA, NEPA, and NHPA — do not contain a private right of action.[14] *See George*, 436 F.3d at 104 (holding that "the [CZMA] creates no private right of action against city agencies" and noting that the Third Circuit, together with district courts in this circuit, "have . . .

---

[13] Plaintiffs lack standing to sue for the same reasons that their claims are not ripe. *Nat'l Org. for Marriage, Inc. v. Walsh*, 714 F.3d 682, 688 (2d Cir. 2013) ("Standing and ripeness are closely related doctrines that overlap most notably in the shared requirement that the plaintiff's injury be imminent rather than conjectural or hypothetical." (quoting *N.Y. C.L. Union v. Grandeau*, 528 F.3d 122, 130 n.8 (2d Cir. 2008)).)

[14] Judge Bloom found that no court has assessed whether the CBRA contains a private right of action, (R&R 25), and it appears that the statute does not contain an express private right of action, *see* 16 U.S.C. § 3501 *et. seq.* Plaintiffs do not object to Judge Bloom's conclusion that the CBRA does not give rise to a private right of action.

declined to find a private right of action in the [CZMA]"); *Maiden Creek Assocs., L.P. v. U.S. Dep't of Transp.*, 823 F.3d 184, 189 (3d Cir. 2016) (noting that "NEPA does not include a citizen's suit provision"); *Karst Env't Educ. & Prot., Inc. v. Env't Prot. Agency*, 475 F.3d 1291, 1295 (D.C. Cir. 2007) (stating that "NHPA, like NEPA, contains no private right of action"); *Cotz v. Gutierrez-Scaccetti*, No. 19-CV-22075, 2020 WL 1284755, at *5 (D.N.J. Mar. 18, 2020) (collecting cases in which "courts in other circuits and districts have . . . held or suggested that no private right of action exists under the NHPA" and holding that the plaintiff "failed to establish the NHPA provides a private right of action"); *Friends of Roeding Park v. City of Fresno*, 848 F. Supp. 2d 1152, 1160 (E.D. Cal. 2012) ("It is well-accepted that three of the federal statutes relied upon by [the plaintiffs] (NEPA, [LWCA], and NHPA) do not create private rights of action to enforce their provisions."). Indeed, Plaintiffs do not challenge the part of Judge Bloom's finding that there is no private cause of action under these statutes, and in reviewing Judge Bloom's determination, the Court finds no clear error.

### ii. Article 78 does not save Plaintiffs' federal claims

Article 78 does not provide a means for Plaintiffs to assert federal claims under statutes that do not otherwise provide for private causes of action.

"Article 78 'provides the mechanism for challenging a specific decision of a state administrative agency.'" *Campo v. N.Y.C. Emps.' Ret. Sys.*, 843 F.2d 96, 101 (2d Cir. 1988) (quoting *Liotta v. Rent Guidelines Bd.*, 547 F. Supp. 800, 802 (S.D.N.Y. 1982)); *see also Orange Env't, Inc. v. Orange Cnty. Legislature*, 2 F.3d 1235, 1236 (2d Cir. 1993) (per curiam) (explaining that an "Article 78 proceeding is [an] appropriate vehicle to obtain judicial review of administrative implementation of legislatively imposed responsibilities" (citing *Town of Arietta v. State Bd. of Equalization*, 56 N.Y.2d 356, 361 (1982))). In addition, plaintiffs cannot bring an

Article 78 challenge under a federal law that contains no private right of action. *See Matter of E. Ramapo Cent. Sch. Dist. v. King*, 11 N.Y.S.3d 284, 286, 288 (App. Div. 2015) (holding that the plaintiff could not bring an Article 78 action alleging violations of the Individuals with Disabilities Education Act ("IDEA") because the IDEA did not contain a private right of action and no implied right of action exists); *George v. Bloomberg*, 769 N.Y.S.2d 535, 536 (App. Div. 2003) (holding that the plaintiffs could not bring an Article 78 proceeding to challenge the City of New York's plans for federal child development grant funds because the relevant federal statute — the Child Care and Development Block Grant Act, 42 USC § 9858 *et seq.* — did not provide for an express or implied private right of action); *see also 35-41 Clarkson LLC v. N.Y.C. Hous. Auth.*, No. 11-CV-6770, 2012 WL 5992094, at *9 (S.D.N.Y. Nov. 30, 2012) ("Although interpretation of [the] plaintiffs' [housing assistance payment] contracts, in an Article 78 proceeding or otherwise, may require reference to federal law, this fact alone is not sufficient to create a private right of action [under federal law].").

Plaintiffs argue that Article 78 provides an independent basis for bringing a private action under the federal statutes at issue, (Pls.' Obj. 16 n.17), but rely on cases that address state rather than federal statutes to support their arguments. *See Patrolmen's Benevolent Ass'n of the City of N.Y., Inc. v. De Blasio*, 94 N.Y.S.3d 52 (App. Div.), *decision recalled and vacated on other grounds sub nom. Patrolmen's Benevolent Ass'n of City of N.Y. v. De Blasio*, 101 N.Y.S.3d 280 (App. Div. 2019) (section 50-a of the New York Civil Rights Law); *Delgado v. N.Y.C. Hous. Auth.*, 888 N.Y.S.2d 19 (App. Div. 2009) (Administrative Code of the City of New York); *Patrolmen's Benevolent Ass'n of the City of N.Y., Inc. v. De Blasio*, No. 153231/2018, 2018 WL 3036350, at *1 (N.Y. Sup. Ct. June 19, 2018) (section 50-a of the New York Civil Rights Law). Nothing in these cases suggests that the Court should construe Article 78 to allow for the civil

enforcement of federal statutes where Congress did not intend for these statutes to provide a private right of action. Indeed, as the Appellate Division recognized in *George*, Article 78 does not permit suits under a federal statute where Congress did not provide a private cause of action. *See George*, 769 N.Y.S.2d at 536 ("Here, Congress clearly manifested its intent to negate a private right of action by creating an enforcement scheme that involves only federal administrative action . . . . [The court is] not persuaded otherwise by [a state law] manifesting legislative concern for the low salaries of day care workers."). The Court therefore finds that Plaintiffs cannot bring an Article 78 action alleging violations of the federal statutes at issue.

     **e.**    **Most of Plaintiffs' claims against New York state and its agencies are barred by sovereign immunity**

     Plaintiffs' state-law claims against New York State, its agencies, and its employees, and Plaintiffs' federal-law claims against New York State and its agencies, are barred by sovereign immunity because New York has not waived its immunity under any statute relevant to this case and Congress has not abrogated the state's immunity.[15]

     The Eleventh Amendment bars suits in federal court against states, state agencies, and state officials acting in their official capacity, absent the state's consent to suit or an express or statutory waiver of immunity. *See Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001) ("The ultimate guarantee of the Eleventh Amendment is that nonconsenting [s]tates

---

[15] Plaintiff sought injunctive and declaratory relief under federal law against Parks Commissioner Seggos and NYS DEC Commissioner Kulleseid, and although these claims are not barred by sovereign immunity, (*see* R&R 22 ("If at all, the Court may only consider claims for declaratory and injunctive relief under federal law against the individual state officials named as defendants." (citing *Tiraco v. N.Y. State Bd. of Elections*, 963 F. Supp. 2d 184, 191–92 (E.D.N.Y. 2013))); *Tiraco*, 963 F. Supp. 2d at 191–92 (setting forth the "three limited exceptions to state sovereign immunity": (1) a state's consent, (2) abrogation by Congress, and (3) "the *Ex parte Young* doctrine, [under which] sovereign immunity does not preclude a plaintiff from seeking prospective injunctive relief or declaratory relief against a state official acting in his or her official capacity for ongoing violations of federal law"), they nevertheless fail because the federal statutes Plaintiffs invoke do not contain private rights of action.

cannot be sued by private individuals in federal court." (citing *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 73 (2000))); *Browdy v. Karp*, 131 F. App'x 751, 752–53 (2d Cir. 2005) ("To the extent [the plaintiff] sues defendants in their 'official capacity' as employees of [a state agency], his . . . claims for money damages are barred by the Eleventh Amendment." (citation omitted) (first citing *Kentucky v. Graham*, 473 U.S. 159, 169 (1985); and then citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100–01 (1984))). "However, 'a plaintiff may sue a state official acting in his official capacity — notwithstanding the Eleventh Amendment — for prospective, injunctive relief from violations of federal law.'" *State Emps. Bargaining Agent Coal. v. Rowland*, 494 F.3d 71, 95 (2d Cir. 2007). "[T]he [Supreme] Court has insisted that an act of Congress purporting to abrogate a state's sovereign immunity under section 5 of the Fourteenth Amendment will not be effective unless Congress's intent to abrogate is 'unmistakably clear.'" *Doe v. Pataki*, 481 F.3d 69, 78 (2d Cir. 2007) (quoting *Nev. Dep't of Hum. Res. v. Hibbs*, 538 U.S. 721, 726 (2003); then citing *Kimel*, 528 U.S. at 73; and then citing *Dellmuth v. Muth*, 491 U.S. 223, 228 (1989)).

Congress did not expressly waive state sovereign immunity under any of the federal statutes invoked in Plaintiffs' Complaint, and Plaintiffs do not argue otherwise. Plaintiffs' argument that the LWCA in particular, and other statutes mentioned more generally, impliedly waive New York's sovereign immunity because they were enacted pursuant to the enforcement clause of the Fourteenth Amendment fails. Pursuant to Supreme Court and Second Circuit law, Congress's abrogation of a state's sovereign immunity pursuant to the Fourteenth Amendment must be "unmistakably clear." *See Doe*, 481 F.3d at 78 ("[T]he Supreme Court has frequently instructed that a state will not be deemed to have waived its sovereign immunity unless the waiver is 'express' and 'unequivocal.' Similarly, the Court has insisted that an act of Congress

purporting to abrogate a state's sovereign immunity under section 5 of the Fourteenth Amendment will not be effective unless Congress's intent to abrogate is 'unmistakably clear.'" (citations omitted) (first quoting *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 680 (1999); and then quoting *Nev. Dep't of Hum. Res.*, 538 U.S. at 726)).

### III.  Conclusion

For the foregoing reasons, the Court adopts the R&R[16] and (1) grants BOEM's motion to dismiss and dismisses this action against BOEM without prejudice for lack of subject matter jurisdiction, (2) grants the motions of the State Defendants, NYPA, and LIPA to dismiss Plaintiffs' federal-law claims with prejudice, and (3) declines to exercise supplemental jurisdiction over the remaining state-law claims against all Defendants, and remands those claims to New York State Supreme Court, Nassau County.  The Clerk of Court is directed to mail copies of this Memorandum and Order to Plaintiffs.

Dated: May 10, 2021
   Brooklyn, New York


         SO ORDERED:


         _____s/ MKB_____
         MARGO K. BRODIE
         United States District Judge

---

[16]  Although the R&R considered additional arguments in support of the motions to dismiss, because the Court finds that the claims against BOEM should be dismissed as unripe, that Plaintiffs cannot state claims under federal law because the statutes they describe do not include federal causes of action, and that sovereign immunity bars Plaintiffs' state-law claims against the state and its agencies and employees as well as Plaintiffs' federal claims against the state and its agencies, the Court declines to consider the other grounds for dismissal set forth in the R&R.